Lee v. Kimball.

---

## STEPHEN S. LEE *versus* WILLIAM KIMBALL.

Where the consignee, in a bill of lading, sells the goods before their arrival, and assigns the bill of lading to the vendee, if the purchase is made in good faith, and in the usual course of business, the right of the consignor to stop the goods *in transitu* is thereby divested, notwithstanding the consideration of the sale was the payment of an antecedent debt.

*It seems*, that such an assignment of the bill of lading as *collateral security*, for an antecedent debt, would not divest the right of the consignor.

THIS was an action of TROVER for a quantity of coal. The case was submitted to the full Court upon an agreed statement of facts.

The plaintiff, a merchant in Baltimore, on the 28th of Oct., 1856, sold to John Cox & Co., of Portland, a cargo of Cumberland coal, for the gross sum of $974,29; and he shipped the coal, to be delivered according to the bill of lading, " to said John Cox & Co., or their assigns, they paying freight." Cox & Co. paid for the coal by two acceptances payable, one in sixty, and the other in ninety days.

Before the maturity of either of said drafts, and before the arrival of the coal in Portland, Cox & Co. became insolvent. But, before their insolvency, and before the arrival of the coal, they sold and conveyed it to the defendant by a bill receipted

Lee *v.* Kimball.

in common form, and at the same time indorsed and delivered to him the bill of lading.

The draft of Cox & Co. first becoming due having been protested for non-payment, and they having become insolvent, the plaintiff claimed the right to stop the cargo of coal *in transitu;* and he seasonably exercised such right by taking possession thereof, before the vessel, having the same on board, came to anchor in the harbor of Portland, and tendering to the master the freight money due thereon.

The defendant had purchased the coal in good faith, in the usual course of business, in payment of a debt then due to him from Cox & Co., without any knowledge that it had not been paid for by them; and he paid the master of the vessel the freight thereon, and took possession, forcibly removing the agent of the plaintiff — who, thereupon, brought this action of trover.

*Deblois & Jackson* argued for the plaintiff: —

The fact that the coal was paid for by Cox & Co., by bills of exchange, did not defeat the right of the vendor to stop it *in transitu,* the vendees having become insolvent. *Newhall* v. *Vargas,* 13 Maine, 93.

This right of the vendor is a continuing lien upon the property, and cannot be divested by an assignment of the bill of lading.

The sale of the goods by the consignee, and the assignment of the bill of lading, in payment of an *antecedent debt,* is not in the usual course of business, and cannot divest the right of the consignor to stop the goods *in transitu.* Parson's Mer. Law, 63; *Stanton* v. *Eager,* 16 Pick. 476; *in re Westzinthus,* 5 B. & A. 201; *Salomons* v. *Nessin,* 2 D. & E. 678.

*Fessenden & Butler* argued for defendant: —

The facts in this case constitute a bar to the right of stoppage *in transitu,* according to well settled principles. Abbott on Shipping, title Stoppage in Transitu; *Lickbarrow* v. *Mason,* 1 Smith's Leading Cases, 507; *Winslow* v. *Norton,* 29 Maine, 419.

Nor does it make any difference that the goods were sold in payment of an existing debt. *Bank of Sandusky* v. *Scoville,* 24 Wend. 115.

The opinion of the Court was drawn up by

CUTTING, J. — In the celebrated case of *Lickbarrow* v. *Mason,* (reported in 6 East, 21,) it was settled that "the consignor of goods may stop them *in transitu,* before they get into the hands of the consignee, in case of the insolvency of the consignee; but, if the consignee assign the bill of lading to a third person, for a valuable consideration, the right of the consignor, as against such assignee, is divested." Such, now, is the established rule of commercial law in England, and in this country.

It appears, from the facts agreed upon by the parties in the case presented, that while the cargo of coal was in transit, and previous to the insolvency of the consignees, they indorsed and delivered the bill of lading to the defendant, "who had purchased the coal in good faith, in the usual course of business, and without knowledge that the same had not been paid for."

But it is contended that a part of the consideration, being the payment of a pre-existing debt due from the consignees to the defendant, rendered the transfer ineffectual to limit the plaintiff's right of stoppage *in transitu.*

This Court have held that a pre-existing debt constitutes a valuable consideration in the transfer of negotiable paper. *Holmes* v. *Smyth,* 16 Maine, 177; *Norton* v. *Waite,* 20 ib., 175. *Vide,* also, *Bank of Sandusky* v. *Scoville,* 24 Wend. 115, and *Swift* v. *Tyson,* 16 Pet. 1. And we think there is no distinction in principle between those cases and the one under consideration. A debt due from a person *solvent* at the time of the negotiation should be considered, when surrendered, equivalent to the payment of money; for, as was well remarked by BRONSON, J., the maker could have paid his note, and then in lieu thereof received back the money. "It is not the case of a note received in security of a pre-existing debt,

without parting with any thing at the time." So here, the coal was received in *payment* and *discharge* of the debt, and not as *security;* and the authorities cited by the plaintiff's counsel apply only to the latter, as does also the second section of R. S., c. 31, which refers to "security for an antecedent demand," and is in affirmance of the commercial law upon that subject. *Plaintiff nonsuit.*

Tenney, C. J., Hathaway, Goodenow, May, and Davis, J. J., concurred.