PATTISON *v.* CULTON and Others.

STOPPAGE IN TRANSITU.—A. shipped from Chicago a quantity of wheat, consigned, according to bill of lading in duplicate taken by him, to B., at Indianapolis, *on account of A.*, who had contracted it to B., but it was not to be his till paid for. A. drew at sight, on the date of the shipment, for the price of the wheat, attaching to the draft one copy of the bill of lading endorsed, and negotiated the draft at a Chicago bank, which transmitted it to an Indianapolis bank for collection. During the forenoon of the day after the shipment, while the wheat was in transit, C. purchased the wheat of B., at Indianapolis, and paid for it, taking from him at the time a bill of lading for the wheat, issued by a railroad company at Indianapolis, on that day, to B., on account of C., who supposed the wheat had then arrived at Indianapolis. The shipping list had been received, but the wheat did not arrive till the night of the following day. C. had no notice of any right of A. to the

wheat. Said draft reached Indianapolis at about the hour that B. sold the wheat to C. An attempt was immediately made to present the draft, but B., the drawee, who was insolvent and failed that day, could not be found. In the afternoon, the Indianapolis bank notified the carrier, said railroad company, to hold the wheat for the consignor; and at a later hour on the same day, a similar notice was given at the express instance of said consignor; and the wheat was held accordingly.

*Held,* in an action of replevin by C., that he had no right to the possession of the wheat.

APPEAL from the Marion Civil Circuit Court.

This was an action of replevin brought by the appellant against the appellees, for certain wheat, then in cars at Indianapolis.

Issues were formed, which were tried by the court. Finding and judgment for the defendants, for the return of the wheat or the payment of the value, which was assessed at twelve hundred and ninety-two dollars, and for one hundred and three dollars damages for the detention thereof. A motion for a new trial was overruled, and the appellant excepted.

The wheat was taken on the writ and delivered to the appellant on the 30th of August, and the finding and judgment were rendered on the 4th of January following. The evidence tended to prove that the wheat weighed forty-seven thousand pounds, and was worth, according to some of the witnesses, one dollar and seventy-five cents per bushel, according to others, one dollar and sixty-five cents per bushel.

FRAZER, J.—We are of opinion that the damages assessed were not excessive.

The case made by the evidence, viewed in the most favorable light to sustain the verdict, as it is our duty to view it, was this: During the forenoon of August 29th, 1867, the plaintiff, Pattison, purchased, at Indianapolis, from H. W. Comstock & Co., forty-seven thousand pounds of wheat and paid for it, taking at the time from them a bill of lading for the property issued by the Indianapolis, Cincinnati

and Lafayette R. R. Co. at Indianapolis, on that day, to H. W. Comstock & Co., on account of Pattison.  The wheat was at the time in transit from Chicago to Indianapolis, arriving the night of the 30th, though Pattison supposed it had arrived, and, indeed, the shipping list had been received.  He had no notice of any right of the defendants to the wheat. The wheat had been shipped from Chicago by the defendants on the 28th, consigned, according to the bill of lading in duplicate taken by them, to H. W. Comstock & Co., at Indianapolis, *on account of the defendants.*  The wheat was contracted by the defendants to- H. W. Comstock & Co., but was not to be theirs till paid for.  The defendants drew at sight on H. W. Comstock & Co. for the price of the wheat, under date of the 28th, attaching to the draft one copy of the bill of lading endorsed, and negotiated the draft at a Chicago bank, which transmitted it to an Indianapolis bank for collection.  The draft reached the latter city about the same hour that Comstock & Co. sold the wheat to Pattison.  An attempt was instantly made to present the draft, but the drawees could not be found.  They were insolvent and failed that day.  At three o'clock, P. M., the Indianapolis bank notified the carrier to hold the wheat for the consignors.  A similar notice was given later, but on the same day, at the express instance of the defendants; and the wheat was accordingly held until taken by the writ of replevin issued in this suit.  The question is, had Pattison a right to possession of the wheat?

A bill of lading is a muniment of title and *quasi* negotiable.  But Comstock & Co. did not possess this evidence of title, and, of course, did not endorse it to Pattison; and herein is found an important difference between this case and *Coxe* v. *Harden,* 4 East, 211; *Dows* v. *Greene,* 32 Barb. 490; *Lee* v. *Kimball,* 45 Me. 172, cited by the appellant.  In *Whitehead* v. *Anderson,* 9 M. & W. 518, there is language to the effect that if the carrier enters into a new agreement with the consignee, distinct from the original contract for carriage, to hold the goods in custody as his agent, subject

to some new order to be given, then the goods are constructively in the possession of the consignee, and the right of the vender to retake them is gone. But it must be borne in mind that the learned baron was speaking of a case in which the goods had arrived at the port of destination, and the sole question was, whether after such arrival the assignee in bankruptcy of the consignee had done such acts as amounted to a constructive possession, thus terminating the transit and making the carrier his mere bailee for the custody of the goods. It was not an attempt, having no bill of lading or other muniment of title, to sell the goods while in actual transit, as in the case before us.

But in the present case, Comstock & Co., at the time of the sale to Pattison, not only had no actual title to the property, by the very terms of their contract with the appellees, but they possessed no indicia of ownership, neither possession nor the bill of lading, and the wheat was yet upon its voyage. Pattison took not only the risk of stoppage, but also the risk of the title of his vendors, without any act of the appellees to mislead him. If he had found Comstock & Co. possessed of an ordinary bill of lading sent to them by their vendors, indicating ownership by the former, he might have safely purchased, and there would be both reason and authority in abundance for holding that the consignors, having thus put it in the power of Comstock & Co. to exhibit evidence of title, should not afterwards as against him question that title. A mere resale by the vendee does not, however, destroy the right to stop, and we know of no case in which it has been held to do so. 2 Kent Com. 547, and cases there cited in the note.

It is argued that if the right of stoppage existed, it was not in this case well exercised. We are not able to concur in this proposition.

Affirmed, with costs.

*A. G. Porter, B. Harrison,* and *W. P. Fishback,* for appellant.

*F. Rand* and *R. H. Hall,* for appellees.