# Linnard's Appeal.

The acceptance of stock pledged as collateral security for notes given in consideration for pre-existing indebtedness, with the understanding that the pledgee shall not sue for the debt until the maturity of the notes, does not constitute the pledgee such a purchaser for value as to preclude the owners of the stock from reclaiming it, if it was procured from them by the fraud of the pledgeor.

In case the certificate of stock pledged contained a power of attorney in blank the owner will not be estopped from claiming it, if the pledgeor was bankrupt and the pledgee suffered no disadvantage by reason of forbearing to sue because of the pledge.

A purchase for value must be for money or money's worth actually given by one party and received by the other.

The indorsement of a promissory note as collateral security for an antecedent debt is not a negotiation for value, unless made upon consideration of an agreement for forbearance.

At law a buyer simply gets what the seller has to part with, and, if the title of the latter is bad, the former must yield to the rightful owner. Thus, one who purchases a certificate of stock acquires only the title of the seller; and, if that is vitiated by fraud, he cannot rely on his own good faith or the payment of value as a defense against the injured party.

(Decided April 5, 1886.)

Appeal from a decree of the Common Pleas, No. 2, of Philadelphia County, in equity. Affirmed.

The facts of the case appear in the opinion of the court below which was by HARE, J., as follows:

Williams obtained a certificate of stock, with a power of attorney in blank from the plaintiffs, by fraudulent pretenses, and pledged it to Linnard as collateral security for a pre-existing debt, in consideration of an agreement on his part to accept promissory notes at ten, sixty, and ninety days for the amount due, and to forbear suit until they matured. The question is: Was this such a purchase for value as precludes the plaintiffs from reclaiming the stock, on the ground of the fraud practised by Williams?

The cause may be considered in the light of two rules which, although related, are yet essentially diverse. Both are clear, and the decision depends on which is applicable to the facts in hand.

Agreeably to one of them, a purchase for value must be for money or for money's worth actually given by one party and received by the other. It is not enough that the price has been agreed on and the contract so far executed as to vest an equitable ownership in the buyer and entitle him to specific performance. There must be actual payment of the purchase money, attended with such a delivery as will pass the legal title; and, unless these requisites are fulfilled, the utmost that the purchaser can claim is reimbursement; and there is no such sale as will preclude antecedent equities, growing out of a fraud or breach of trust. Mingus v. Condit, 23 N. J. Eq. 313; Morse v. Godfrey, 3 Story, 389, Fed. Cas. No. 9,856; Wood v. Mann, 1 Sumn. 506, Fed. Cas. No. 17,951; Haughwout v. Murphy, 21 N. J. Eq. 118, Affirmed in 22 N. J. Eq. 531; Youst v. Martin, 3 Serg. & R. 423; Juvenal v. Jackson, 14 Pa. 519.

Such is the established doctrine as it regards land, and it applies to chattels and choses in action. Clark v. Flint, 22 Pick. 231, 33 Am. Dec. 733; Bay v. Coddington, 5 Johns. Ch. 54, 9 Am. Dec. 268, Affirmed in 20 Johns. 637; Dickerson v. Tillinghast, 4 Paige, 215, 25 Am. Dec. 528; Root v. French, 13 Wend. 570, 28 Am. Dec. 482.

Although the *dicta* are conflicting, the better opinion would seem to be that an assignment for the payment of debts, or even a transfer to an individual creditor in consideration of forbearance, is not an answer to a bill filed to enforce a trust. See Ashton's Appeal, 73 Pa. 153; Stevens v. Brennan, 79 N. Y. 254.

The disproportion between the premises and the conclusion, the transaction and the consequence sought to be deduced, would be so great as to revolt the conscience of a chancellor. See Coddington v. Bay, 20 Johns. 637, 11 Am. Dec. 542.

On one side is an owner seeking to recover that which was confessedly his own and which he never agreed to part with; on the other a defendant who, without controverting the complainant's title or that he has been grossly wronged, asks to be protected as a purchaser for value, and yet admits that he paid nothing, and that he simply delayed the institution of a suit that might have been fruitless if brought. If such a defense is valid, it must be equally so whether the delay is for a week, a month, or a year; and this although the debtor was insolvent when the sale took place, or might still be compelled to pay by prosecuting the demand to judgment and execution. Forbearance is, even under these circumstances, a valid consideration at law, but it does not warrant a grantee in claiming a better equitable right than that held by the grantor, contrary to the maxim, *Nemo plus juris in alium transferre potest quam ipse habet.*

Time brought with it a new class of contracts designed for a specific purpose and governed by rules that were previously unknown, either in equity or to the courts of common law. Negotiable paper found its way into the channels of trade, and was sanctioned by Parliament and assimilated to cash. The negotiation of a bill of exchange or promissory note, payable to bearer or indorsed in blank, conferred a valid title, no matter by what means the instrument had been obtained, and whether it was taken in payment or merely as a security. The latter point long remained in doubt, but was finally adopted in England after the present lord chief justice had been for some years on the bench, notwithstanding his strenuous dissent; and it likewise prevails in Massachusetts and Connecticut and some other states. Culver v. Benedict, 13 Gray, 7; Bridgeport City Bank v. Welch, 29 Conn. 475; Oates v. First Nat. Bank, 100 U. S. 239, 25 L. ed. 580.

It was decisively rejected in Bay v. Coddington, 5 Johns. Ch. 54, 9 Am. Dec. 268, by Chancellor KENT, as at variance with principles of natural equity which had long been recognized in the court of chancery, and were as applicable to the negotiation of bills and notes as to transfers of any other kind. This decision is still followed by the courts of New York; and the ad-

herence of a great mercantile community to a rule which must sometimes be a source of serious inconvenience to men in trade may be regarded as a proof that it is sound.

The courts of Pennsylvania take this intermediate ground: that the indorsement of a note as collateral security for an antecedent debt is not a negotiation for value, because the indorsee parts with nothing, and simply acquires an additional means of payment; but that an agreement for forbearance is as much a consideration for such a transfer as it would be for a guaranty, and the court will not inquire into its adequacy.

It might be inferred from the language held by Justice GIBSON, in Petrie v. Clark, 11 Serg. & R. 377, 14 Am. Dec. 636, that a transfer by an executor or trustee, as a security for his individual debt, in consideration of an agreement by the creditor to give time for payment, if followed by his insolvency and the loss of the amount due, is not only valid as between the parties, but good against the parties whom it defrauds; but the point was not before the court; and such a rule has never, so far as I am aware, been applied in this state or in England.

There is no analogy between the negotiation of a promissory note and the transfer of real or personal property, to justify measuring both by the same standard. See Peacock v. Rhodes, Dougl. K. B. pt. 2, p. 636. In the former case, the maker expressly or impliedly agrees to be answerable, not only to the payee, but to everyone claiming under him by delivery or indorsement; and, if a consideration exists as between the indorser and indorsee, it is immaterial that there was none as between the original parties. A buyer, on the other hand, simply gets what the seller has to part with, and, if the title of the latter is bad, must yield to the rightful owner. This rule is universal at law, and the only exception to it in equity is where an equitable demand is met by countervailing equities so strong that to allow it to prevail would be a greater wrong to the defendant than that which the complainant seeks to have righted.

The main question in this case, therefore, seems to be: Is a certificate of stock to be classed with land, with chattels, and with choses in action, or does it come under the head of negotiable instruments? If it comes under the latter, the defendant is entitled as a purchaser for value; if under the former, he has no such claim, and must stand or fall by the title of his grantor.

There can, apparently, be but one reply: a stock certificate is not a contract, nor does it purport to be negotiable; but is simply evidence that the holder is entitled to a definite share in the capital of some corporate or unincorporated company or association. Weaver v. Barden, 49 N. Y. 286.

One claiming under the transfer of such an instrument may, therefore, acquire the title of the transferrer, but will acquire no more; and if that is vitiated by fraud, he cannot rely on his own good faith or the payment of value as a defense against the injured party.

The sale and delivery of a certificate of stock does not, without more, have the effect of a conveyance for value of land; and it leaves the purchaser, like the assignee of a bond or mortgage, subject to all equities that could have been enforced against the assignor.

If the above view is correct, there has been no negotiation of the stock itself, nor of the certificate, that would cure the flaw in the defendant's title. There is, however, another feature in the case on which he relies with confidence, and that gives rise to a more doubtful question.

The certificate was attended with a power of attorney, with a blank left vacant for any name which the holder might think fit to insert as that of the person by whom the authority was to be exercised, and it is contended that the plaintiffs are precluded from contesting the reality of the appearance thus held forth, and upon which the defendant acted. Conceding that the defendant's title is defective; the plaintiffs are estopped from showing that the stock rightfully belongs to them, because their acts and Plush's signature to the blank power of attorney were the means of misleading the defendant.

The argument would be unanswerable had the defendant advanced money on the faith of the certificate, or were he shown to have been a loser in any other way; but this is so far from being the case that the evidence points in the opposite direction. Williams was hopelessly insolvent when he applied to Linnard for an extension of time, and, so far as we can gather from the proofs, had nothing on which Linnard could have levied had he proceeded to judgment and execution.

The object of an equitable estoppel is indemnity, to protect the person who relies upon it from actual loss; and he must make out his case with reasonable certainty in that as in every

other particular. Such is the established principle, even when one of the parties has wilfully deceived the other; and it applies, for a stronger reason, where both are the innocent victims of a fraud practised by a third person.

We need not inquire as to the rule where a solvent man obtains time in consideration of the transfer of stock as a collateral and fails subsequently, because the case is not before us; but it is clear that, where the debtor's circumstances are unchanged, and there is no real loss, the creditor will acquire no more than the debtor owned and could honestly transfer. As the language of Justice GIBSON in Petrie v. Clark indicates, forbearance does not constitute an equity save through its consequences; and a creditor cannot rely upon an agreement for time, as a justification for withholding the assets which he has received as collateral security from the person to whom they rightfully belong, unless it has resulted in the loss of the debt.

We rely with the more confidence on the above conclusion because it tends to prevent the breaches of trust which are only too common, by rendering it to the interest of creditors to investigate the circumstances of their debtors, instead of blindly accepting whatever they have to offer in the hope that it may be a plank on which to escape from shipwreck.

A man who is asked to lend money on the faith of a pledge of stock is naturally disposed to be critical, and will not incur the risk of loss if there is anything in the situation of the borrower or the nature of the security to inspire doubt. Far different is his position who has already lent what he has little hope of regaining, and who is offered a collateral security as the price of an indulgence which he has too much reason to believe cannot prejudice him, and may enable the debtor to retrieve his fortunes and repay. A man so placed is naturally inclined to close his eyes and accept whatever the party with whom he is dealing has to give; and the temptation to accept may be irresistible if he knows that the pledge will confer a good title, however false or fraudulent the steps by which the property was acquired.

We are therefore of opinion:

First, that the pledge under which the defendant claims is not such a purchase for value as to cure the defect in his title, or preclude the complainants from reclaiming their stock on the ground of fraud.

Second, that there is no such proof of loss on the defendant's part as to constitute an equitable estoppel.

And last, that the complainants' exceptions to the master's report should be sustained, and a decree made in their favor.

The defendant appealed.

*John R. Reed* and *Silas W. Pettit,* for appellant.—The giving of time will be a present and valuable consideration; and a pledge on these terms will be the same as a pledge for money paid down. Petrie v. Clark, 11 Serg. & R. 377, 14 Am. Dec. 636.

The title to the stock passes to the creditor at the time of the delivery of the certificate and power of attorney, although it continued to stand on the books of the company in the debtor's name. Finney's Appeal, 59 Pa. 398; German Union Bldg. & Sav. Fund Asso. v. Sendmeyer, 50 Pa. 67; Com. v. Watmough, 6 Whart. 117; Wood's Appeal, 92 Pa. 379, 37 Am. Rep. 694.

The unquestioned rule relating to a transaction of the nature of the present is clearly stated in Bigelow, Estoppel, 3d ed. pp. 479, 480, 484, that, where the true owner of the property holds out or allows another to appear as the owner of, or as having full power of disposition over, the property, the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Such rights do not depend upon the actual title or right or authority of the party with whom they have directly dealt, but are derived from the act of the real owner which precludes him from disputing, as against him, the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale. So again; if a man purchase bona fide and for value an unnegotiable chose in action from one upon whom the owner has by assignment or otherwise conferred the apparently absolute ownership, he obtains a valid title against the real owner, supposing the act of purchase to have been induced by such act of the owners. Moore v. Metropolitan Nat. Bank, 55 N. Y. 41, 14 Am. Rep. 173; Combes v. Chandler, 33 Ohio St. 178.

It is sufficient if the party trusting representations made or, as in this case, the evidence furnished by the appellees that Williams was the true owner of the stock, "has changed his position

by refraining from steps which would otherwise probably have been taken."

The original actor will be precluded from alleging the contrary of that which he has led the other party to understand to be true. Continental Nat. Bank v. National Bank, 50 N. Y. 575; Casco Bank v. Keene, 53 Me. 103; Knights v. Wiffen, L. R. 5 Q. B. 660.

In Wood's Appeal, 92 Pa. 379, 37 Am. Rep. 694, in the course of his opinion Justice TRUNKEY says the rights of a bona fide holder as against the true owner of the stock, to whom the apparent owner has either sold or pledged, do not depend on a negotiable character in the certificates but rest on another principle, namely: That one who has conferred upon another by a written transfer all the *indicia* of ownership of property is estopped to assert title to it as against a third person who has in good faith purchased it for value from the apparent owner. If the owner intrusts to another the possession of property and also written evidence of title and power of disposition of it as respects innocent third persons, he is deemed as intending it shall be disposed of at the pleasure of the depositary.

*Joseph DeF. Junkin* and *George Junkin,* for appellee.—Appellant cannot hold this certificate for his antecedent debt. See Ashton's Appeal, 73 Pa. 153–162, and cases cited. He parted with no money or other thing of value. His claim must rest upon the doctrine of estoppel. It is always essential to prove that there was actual loss. Bispham says, § 291: "The party setting up an estoppel must have sustained actual damage;" and cases cited in note 4, Hill v. Epley, 31 Pa. 331, are to the same effect. "The facts necessary to work an estoppel must appear affirmatively." "If no injury has resulted from the misrepresentation, the adverse party is without remedy." Bitting's Appeal, 17 Pa. 211; Com. v. Moltz, 10 Pa. 531—2, 51 Am. Dec. 499; Ayres v. Wattson, 57 Pa. 363—4.

PER CURIAM:

It is unquestioned that the certificate of the stock in question was transferred to the appellant in fraud of the rights of the appellees. The attempt, however, is to put the former on higher ground than that occupied by his vendor. The evidence shows no equities to produce that result.

We therefore concur with the learned judge in holding that the pledge under which the appellant claims is not such a purchase for value as to cure the defect in his title, or to preclude the appellees from reclaiming their stock on the ground of fraud in its transfer.

Decree affirmed and appeal dismissed, at the costs of the appellant.