LEAVENWORTH LODGE NO. 2, INDEPENDENT ORDER OF ODD FELLOWS, *et al.*, v. JAMES L. BYERS *et al.*

54 323
54 627

1. MORTGAGE—*What Included in Foreclosure—Right to Use Party Wall.* Where the owner of a lot, desiring to erect a building of certain dimensions thereon, enters into a written agreement with the owner of the adjoining lot, who has a three-story brick building already erected upon his lot, to use the east wall of such building for the joists of his proposed building, and as a party wall, and, in accordance with such agreement, constructs a two-story brick building upon his own lot, extending the joists thereof into the east wall of the three-story brick building adjoining, and at the time of such written agreement between the adjoining lot owners, the three-story brick building and the lot upon which it stands are heavily mortgaged, and subsequently the mortgage is foreclosed, the adjoining lot owners being parties defendant in the action, and being duly served with summons, and by the foreclosure being barred of all the title, right and interest in and to the mortgaged property from and after the sale thereof, the decree of foreclosure and the issuance of a sheriff's deed thereon gives the purchaser all the title and interest of the defendants to the property; and such purchaser at the sheriff's sale becomes the sole owner of the lot upon which the three-story brick building stands, including the party wall and so much of the joists as were put into the east wall by the adjoining lot owner.

2. ADJOINING OWNERS—*Mutual Rights and Duties.* The general principle is, that every owner of a lot, building or other real estate has absolute dominion over his own property, but the right of an owner of a lot or building to take down or change any foundation, wall, or other part thereof, without being answerable for the consequent injury to his neighbor's house or building, is subject to the qualification that he must exercise due care and skill, and that he will be liable in damages, if the injury to his neighbor is occasioned by the negligent and unskillful manner in which the work is performed.

3. CROSS-PETITION IN ERROR—*Time of Filing.* The filing of a cross-petition attached to a transcript or case-made previously filed in the supreme court to reverse or modify the judgment or final order of the trial court is the commencement of a proceeding in the court at the instance of the party filing the same; and such cross-petition must be filed in the supreme court within one year after the rendition of the judgment or the making of the order complained of, unless the party is under disability.

*Error from Leavenworth District Court.*

ON the 8th day of October, 1888, the plaintiffs, Leaven-worth Lodge No. 2, of the Independent order of Odd Fellows, Germania Lodge No. 9, of the Independent Order of Fellows, Metropolitan Lodge No. 27, of the Independent Order of Odd Fellows, Mechanics Lodge No. 89, of the Independent Order of Odd Fellows, Alemannia Lodge No. 123, of the Independent Order of Odd Fellows, Far West Encampment No. 1, of the Independent Order of Odd Fellows, and Schiller Encampment No. 2, of the Independent Order of Odd Fellows, commenced their action against the defendants, James L. Byers, Elizabeth Mayo, and Lewis Mayo, to recover the possession of lot No. 18, in block 70, in Leavenworth city. Afterward, and on the 1st of November, 1888, the plaintiffs filed an amended petition. Among other things, they alleged that—

" James L. Byers and Elizabeth Mayo each claim to own and to be, by said Lewis Mayo, their tenant, in possession of lot 19 in the above-named block, and of the building in part on said lot 19 and in part on a lot or lots east thereof, and the west end of the joists of which building have been placed within the eastern part of the above-mentioned east wall, which joists are a great many in number — plaintiffs do not know how many and cannot count the same, because they are covered in part — and said three several defendants respectively claim the right to maintain the same in that wall, and said plaintiffs allege that the whole of said east wall is on and part of the aforesaid lot No. 18, and the property of said plaintiffs; and said defendants threaten to continue to so maintain said building as to maintain said joists in said east wall, so as to permit the west end of the same to rest in the east part of said east wall, all without right, authority or license so to do, and all of which aforesaid acts and threatenings of said defendants, and of each of them, are unlawful and wrongful and against the rights of said plaintiffs."

The plaintiffs demanded judgment against the defendants " for the delivery to said plaintiffs of the possession of the above-described parts of said lot 18, and of said east wall,

and the aforesaid holes therein, and for costs of suit, etc.;" and also demanded judgment "that said defendants, and all persons claiming by, from, through or under them, be forever enjoined and restrained from placing, keeping or maintaining any joists, timber or other things in the above-mentioned east wall of the first above-mentioned building, or any part thereof, and that the joists and timbers aforesaid be ejected and removed from and out of said east wall." The first trial was had on January 22, 1889, and judgment rendered in favor of the plaintiffs and against the defendants. This judgment was set aside upon the application of the defendants, and a second trial was had at the December term of the court for 1889, before the court, a jury being waived. The court stated and filed separately its conclusions of fact and of law, as follows:

CONCLUSIONS OF FACT.

"1. That on and before October 31, 1868, the Odd Fellows' Building Association, of Leavenworth, Kas., a corporation duly organized and then existing under the laws of Kansas, being then the owner in fee simple of lots 17 and 18, in block 70, in the city of Leavenworth proper, in Leavenworth county, caused to be erected on said lots, for its use and benefit, a three-story brick building, fronting on Shawnee street, in the city of Leavenworth; that the said lots are 48 feet wide, extending back, south, from Shawnee street 125 feet to an alley in said block; that the said brick building, so constructed, extended back from Shawnee street $94\frac{1}{2}$ feet; that the said building was built upon a stone foundation, 30 inches thick; that the brick walls erected upon said stone wall were 24 inches thick; that the said building was and is a strong and substantial structure; that the said building, so constructed, extended fully up to the east line of said lot 18, and south from Shawnee street $94\frac{1}{2}$ feet along said east line of said lot 18.

"2. That M. S. Grant, in 1873, was the owner of lots 19 and 20, in said block 70, and that said lot 19 was adjoining said lot 18 aforesaid on the east; that said Grant, being desirous of erecting a substantial two-story brick building on his lots, covering the whole thereof, and up to the east line of said lot 18, made, on January 3, 1873, a written agreement with the Odd Fellows' Building Association to make use of

the easterly wall and foundation on lot 18, as a party wall, and to extend the wall from the south end thereof to the alley, and to use the same for his proposed building on lot 19; that in pursuance of said agreement, said M. S. Grant did, in the year 1873, build a substantial two-story brick building upon said lots, the same being 48 feet front on Shawnee street and 125 feet deep; that said Grant did, in pursuance of said agreement, put at his expense on said lot 18, that is along the east line of said lot 18, and commencing at the south end of the east wall of the said Odd Fellows' building, a stone foundation 30½ feet in length, and 30 inches thick, and did leave on the west side thereof footing for joists, in case the Odd Fellows should wish to extend their building over the whole of their lots 17 and 18; that said Grant also erected on said foundation, so by him made, a brick wall two-stories high, and 30½ feet in length; and said Grant, under and in pursuance of said agreement, extended the joists of his said building supporting the second floor thereof and the joists supporting the roof of his said building, into the east wall of said brick building on said lot 18, and into the 30½ feet of wall by him erected four inches; that such joists are 10 inches wide, and two inches thick, and 16 inches apart from center to center; that said joists have remained so extended into said east wall aforesaid ever since 1873; and that they are still so extended into said east wall; that said east wall is not perceptibly injured or weakened thereby, or the said Odd Fellows' building appreciably damaged or injured in any respect because thereof, and that no perceptible damages have accrued to the said building of plaintiffs because thereof.

"3. That on the 31st day of October, 1868, the said Odd Fellows' Building Association, then being the owner of said lots 17 and 18 and the building thereon, did mortgage the said lots and the building thereon to the Connecticut General Life Insurance Company, to secure the payment of a large sum of money, and that after the 3d day of January, 1873, said Connecticut General Life Insurance Company commenced suit to foreclose its said mortgage, in the district court of Leavenworth county, Kansas, against said Odd Fellows' Building Association, M. S. Grant, and others, and did, on the 17th day of September, 1873, obtain a judgment of foreclosure thereon; that in such action M. S. Grant was duly served with summons, but did not file an answer in said action of foreclosure, but made default therein; that the petition in said action of foreclosure was sufficient, and contained

the usual allegations in such action, and that the interest of said M. S. Grant, if any he had, of, in and to said lots 17 and 18 was subsequent, junior and inferior to the mortgage lien of said Connecticut General Life Insurance Company; that the judgment in said action was sufficient and in the usual form, barring said M. S. Grant and other defendants from any interest in the said lots 17 and 18 and the buildings and improvements thereon from and after sale thereof by the sheriff of said county of Leavenworth; that said lots 17 and 18 and the improvements thereon were, after the rendering of said judgment of foreclosure, duly sold by the sheriff of Leavenworth county, Kansas, and the sale duly confirmed, and a deed made, executed, acknowledged, and delivered to said Connecticut General Life Insurance Company of said property, on the 19th day of December, 1873, and thereby the Connecticut General Life Insurance Company became the owner of the whole of said lots 17 and 18 and the walls and the buildings and improvements thereon in fee simple; that said sheriff's deed was duly recorded on the 19th day of December, 1873, in the office of the register of deeds in and for Leavenworth county, Kansas; that afterward the plaintiffs herein, by mesne conveyances, became the owners of said lots 17 and 18 and the buildings and improvements thereon, and were the owners thereof at and before the commencement of this action; that at the time and long before they purchased said lots 17 and 18 the occupation of said wall by the joists of the said M. S. Grant's building was open and notorious; that afterward, in 1887, said James L. Byers and Elizabeth Mayo became the owners of said lots 19 and 20, in fee simple, and the buildings and improvements thereon, under and by virtue of a sheriff's deed duly made, executed, acknowledged and delivered to them in a foreclosure suit in the district court of Leavenworth county, Kansas, based upon a mortgage given by said Grant upon said lots 19 and 20 in 1874; that said Lewis Mayo is a tenant of said premises under said James L. Byers and Elizabeth Mayo.

"4. That on the day of the trial of this cause and before the trial thereof was commenced, the said defendants offered to pay all costs up to that date, to make, execute, acknowledge and deliver a quitclaim deed to all their interest, if any, in said lots 17 and 18, and all the walls thereon up to the east line of said lot 18, and to enter into a lease with plaintiffs to pay a nominal rent for the use of the said east wall for the joists so inserted in said east wall, so long as said east wall

of said lot 18 should remain in its present condition, or until defendant's building should be removed or destroyed, which was refused by plaintiffs."

CONCLUSIONS OF LAW.

"1. That the plaintiffs are entitled to a judgment that they are the owners in fee simple of lots 17 and 18, in block 70, Leavenworth city proper, with all the walls, buildings and improvements thereon up to the east line of said lot 18, and are entitled to the possession thereof, and that the defendants unlawfully keep them out of the possession of the holes in the east wall of the building on lot 18, and in the 30½ feet extension thereof.

"2. That the costs of this suit should be adjudged against the defendants."

Subsequently, and on May 10, 1890, the following judgment was rendered:

"It is therefore now by the court here considered, ordered, and adjudged, that said plaintiffs, Leavenworth Lodge No. 2, of the Independent Order of Odd Fellows, Germania Lodge No. 9, of the Independent Order of Odd Fellows, Metropolitan Lodge No. 27, of the Independent Order of Odd Fellows, Mechanics' Lodge No. 89, of the Independent Order of Odd Fellows, Alemannia Lodge No. 123, of the Independent Order of Odd Fellows, Far West Encampment No. 1, of the Independent Order of Odd Fellows, and Schiller Encampment No. 2, of the Independent Order of Odd Fellows, are the owners in fee simple of the following-described tracts of land, situate, lying and being in the city and county of Leavenworth, in the state of Kansas, namely: Lots number 17 and 18, in block number 70, in Leavenworth city proper, with all the walls, buildings and improvements thereon up to the east line of said lot 18, and are entitled to the possession thereof; and that said defendants, James L. Byers, Elizabeth Mayo, and Lewis Mayo, unlawfully keep said plaintiffs out of the possession of the holes in the east walls of the brick building on said lot 18, said wall being 94½ feet long, and out of the possession of 30½ feet wall extension thereof, and the holes therein mentioned in the conclusion of fact in this case, and that said plaintiffs have and recover the same and the possession thereof of and from said defendants, and that execution issue therefor. And it is also now by the court here further considered, ordered, and adjudged, that said plaintiffs have and

recover of and from said defendants all their (plaintiffs') costs herein expended, taxed at $——, and that execution issue therefor."

The plaintiffs bring the case here for review.

*L. B. & S. E. Wheat*, for plaintiffs in error.

*Lucien Baker*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: Prior to October 31, 1868, the Odd Fellows' Building Association, of Leavenworth, being the owners of lots 17 and 18, in block 70, in that city, constructed on the lots a three-story brick building fronting on Shawnee street. The building extended back from the street $94\frac{1}{2}$ feet. Its foundation was of stone, 30 inches thick, and the brick walls erected upon the stone foundation were 24 inches thick. The building extended up to the east line of lot 18. On the 31st day of October, 1868, the Odd Fellows' Building Association mortgaged the lot and building thereon to the Connecticut General Life Insurance Company to secure the payment of about $35,000, with interest. After this mortgage was executed, and while in full force, M. S. Grant, the owner of lots 19 and 20, in block 70, being desirous of erecting a two-story brick building on his lots covering the whole of the same and up to the east line of lot 18 (lot 19 being adjoining to lot 18 on the east), on January 3, 1873, entered into a written agreement with the Odd Fellows' Building Association to make use use of the easterly wall and foundation on lot 18 as a party wall, and to extend the wall on that lot from the south end thereof to the alley. In pursuance of the agreement, M. S. Grant, in 1873, built a two-story brick building upon his lots, the same being 48 feet front on Shawnee street, and 125 feet deep. He also erected, at his own expense, along the east line of lot 18 a stone foundation $30\frac{1}{2}$ feet in length and 30 inches thick, and left on the west side thereof places for joists, in case the building association should wish to extend their building over the whole of lots 17

and 18. He erected on this foundation a brick wall two stories high and $30\frac{1}{2}$ feet in length, and extended the joists of his building supporting the second floor thereof, and the joists supporting the roof of his building about four inches into the east wall of the brick building on lot 18, and into the $30\frac{1}{2}$ feet of the wall erected by him. The joists were 10 inches wide and 2 inches thick, and 16 inches apart from center to center, and have remained so extended into the east wall since 1873. The court specially found

"That said east wall is not perceptibly injured or weakened thereby, or the said Odd Fellows' building appreciably damaged or injured in any respect because thereof, and that no perceptible damages have accrued to the said building of plaintiffs because thereof."

On the 31st day of January, 1873, the Connecticut General Life Insurance Company commenced its action in the district court of Leavenworth county to foreclose its mortgage upon lots 17 and 18 and the building thereon, against the Odd Fellows' Building Association, M. S. Grant, and others, and on the 17th day of September, 1873, obtained judgment against the Odd Fellows' Building Association for about $39,000, and also a decree of foreclosure. M. S. Grant, although duly served with a summons in that case, did not file an answer, but made default. The judgment barred him and the other defendants from any interest in lots 17 and 18 and the buildings and improvements thereon, from and after sale thereof under the foreclosure. Lots 17 and 18 were duly sold by the sheriff of Leavenworth county, and the sale confirmed, and the deed executed to the insurance company on the 19th of December, 1873. This deed was recorded on the same day in the office of the register of deeds in Leavenworth county. Afterward, the plaintiffs became the owners of lots 17 and 18 by conveyance from the insurance company, and were the owners thereof at and before the commencement of this action. In 1887, James L. Byers and Elizabeth Mayo, the present owners of lots 19 and 20, obtained title of these lots by sheriff's deed under a decree of foreclosure. Lewis Mayo

is the tenant of the premises under James L. Byers and Elizabeth Mayo.

After the insurance company became the owner of lots 17 and 18, under its sheriff's deed of the 19th of December, 1873, M. S. Grant had no further title, right or interest in the east wall on lot 18. He was barred of all title, right and interest after the sheriff's sale of the premises and the execution of the deed. The decree of foreclosure under which James L. Byers and Elizabeth Mayo obtained title, in 1887, was upon a foreclosure of a mortgage given in 1874, after the execution of the sheriff's deed to lots 17 and 18, of the 19th of December, 1873, to the insurance company. Therefore, James L. Byers and Elizabeth Mayo purchased lots 19 and 20 with notice of the title of the insurance company to lots 17 and 18, and that the sheriff's deed to lots 19 and 20 gave them no title, right or interest to any part of lot 18 or the building or improvements thereon. The stone foundation and the brick wall erected on lot 18 by M. S. Grant, together with so much of the joists as were put up by him in the east wall on lot 18, became the property of the insurance company, the defendants not being the owners thereof by their purchase at the sheriff's sale of lots 19 and 20. This the defendants seem to have admitted upon the trial, because they offered to quitclaim to the plaintiffs all their interest, if any, in lots 17 and 18, and in the wall of the east line of lot 18, and also offered to pay all the costs up to the time of making the offer.

It also appears from the record that the sheriff's sale of lots 17 and 18 to the insurance company took place on the 6th of December, 1873 — more than 14 years and 10 months before the commencement of this action. If the plaintiffs had delayed a few days longer in the bringing of their action it would have been barred by the 15 years' statute of limitation. In view of all the facts, the trial court committed no error in refusing to render further judgment enjoining or restraining the defendants. (*Rankin v. Charless*, 19 Mo. 490; *Abrahams v. Krautler*, 24 id. 69.) The defendants, having

no interest in the holes or joists in the east wall of lot 18, nor any interest in so much of the joists as are within the east wall, cannot be required to fill up the holes or take the joists out. All of the wall belongs to the plaintiffs, not to the defendants; therefore the judgment goes further than necessary. Of course, in the enforcement of the judgment of the trial court, neither the plaintiffs nor their agents or servants have any right to enter upon lots 19 or 20, or to negligently, recklessly or wantonly injure the building on those lots. Under the sale of lots 17 and 18 upon the decree of foreclosure and the judgment in this case, the plaintiffs are entitled to their "pound of flesh," but "no jot of blood." The judgment declares that the plaintiffs "are the owners of lots 17 and 18, with all the walls, buildings and improvements thereon up to the east line of lot 18, and that they are entitled to the possession thereof." This includes the holes in the east wall of the brick building on lot 18, and all of the joists in the wall.

1. Mortgage— what included in foreclosure —right to use party wall.

If there shall be any trouble between the plaintiffs and defendants about the severance or cutting of the joists between the buildings on lots 18 and 19, a court of equity, upon application therefor, will give such relief in the premises as the plaintiffs are entitled to. If the plaintiffs, being the owners thereof, desire to take down or repair the east wall on lot 18, or any part thereof, so as to affect in any way the building on lot 19, under the circumstances disclosed in the record, sufficient notice ought to be given to the defendants. The general principle is that every owner has absolute dominion over his own property, and therefore the plaintiffs, as owners of lots 17 and 18 and the building and improvements thereon, have the natural right to the use of the same in their own way; but the right of an owner to use his own land in any way he desires, or to take down or change any foundation or wall or other improvement, without being answerable for the consequent injury to his neighbor's house, is subject to the

2. Adjoining owners— mutual rights and duties.

qualification that he must exercise due care and skill, and that he will be liable in damages, if the injury to his neighbor is occasioned by the negligent and unskillful manner in which the work is performed. (*Moody v. McClelland,* 39 Ala. 45.)

A cross-petition has been filed by the defendants, making complaint of the rulings and judgment of the trial court. It appears that the judgment was rendered on the 10th of May, 1890. The plaintiffs filed their petition in error in this court on December 16, 1890, about seven months after the judgment. The cross-petition was not filed in this court until April 24, 1894, nearly four years after the motion for a new trial was overruled and the judgment rendered. Errors complained of by a defendant in error will not be considered in this court when he fails to file a cross-petition in error. (*Hanna v. Barrett,* 39 Kas. 446.) The filing of a cross-petition is the commencement of a proceeding in this court, at the instance of the party filing the same, to reverse or modify an order or judgment of the trial court. Such a proceeding must be commenced within one year after the rendition of the judgment or the making of the order complained of, unless the party is under disability. The proceeding to reverse or modify the judgment upon the cross-petition has been commenced in this case more than a year after the rendition of the judgment complained of, and therefore such cross-petition has been filed too late.

3. Cross-petition in error—time of filing.

As the plaintiffs have no cause of complaint against the judgment rendered, it will not be changed or reversed at their instance. The prayer of the petition in error of plaintiffs will therefore be refused.

All the Justices concurring.