## WAILS *et al.* v. FARRINGTON.

No. 653.    Opinion Filed January 10, 1911.

1. APPEAL AND ERROR—Time for Taking Appeal—Order Overruling Demurrer. Although more than one year has intervened between the order of the court overruling defendant's demurrer to plaintiff's petition and the filing of the petition in error in the Supreme Court, this court will review the action of the court in overruling said demurrer on proceedings in error to review the final judgment, commenced within the statutory time.

2. REPLEVIN—Fraud—Possession—Sufficiency of Petition. Where a petition in replevin, after stating facts to show the jewelry to have been parted with by plaintiff in a trade to W. as a result of his fraud, stated that, after rescission and demand for its return, W. sold and "delivered said jewelry to" E., who "now claims said jewelry or an interest therein," and that, by reason of "said false, fraudulent, and wrongful detention of said property," she was damaged, etc.—held, that the same states facts sufficient to show E. in possession of the property at the commencement of the action.

3. SAME—Necessity for Demand—Bona fide Purchaser—Pre-existing Debt. A petition in replevin which, after stating facts sufficient to show the jewelry to have been parted with by plaintiff in a trade to W. as a result of his fraud, stated that, after rescission and demand for its return, W. sold it to E. for the consideration only of a credit on a promissory note theretofore executed, evidencing a debt pre-existing between them, and "delivered said jewelry to" E., "who now claims said jewelry or an interest therein," and that, by reason "of said false, fraudulent, and wrongful detention of said property," she was damaged, etc. —held, that the same states facts sufficient to show that E. came wrongfully into possession of the property, and that a demand for its return was unnecessary before the commencement of the suit.

4. SAME. Where W. secured possession of a stock of jewelry, the property of F., as the result of fraud in a trade with her and, after rescission and demand for its return, sold it to E. for the consideration only of a credit on a promissory note theretofore executed, evidencing a debt pre-existing between them—held, that E. was not a bona fide purchaser for value, and that F. was entitled to recover from E. in replevin the property or its value.

5. PROPERTY—Possession—Presumption of Continuation. Possession being a fact continuous in its nature, when its existence is once shown, it will be presumed to continue until the contrary is proved.

6.  **APPEAL AND ERROR—Filing of Cross-Petition—Expiration of Time.** This court has no jurisdiction to entertain a cross-petition in error, unless the same be filed within one year after the rendition of the judgment complained of.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; Geo. W. Clark, Judge.*

Replevin by Emma L. Farrington against J. C. Wails and W. F. Essex. Judgment for plaintiff, and defendants bring error. Affirmed.

*Harris & Wilson* and *Claud Nowlin,* for plaintiffs in error. *A. J. McMahan,* for defendant in error.

TURNER, J. This is a suit in replevin brought without bond by Emma L. Farrington, defendant in error, in the district court of Oklahoma county, against J. C. Wails and W. F. Essex, plaintiffs in error, for the possession of a certain stock of jewelry, or its value, $2,100. After separate general demurrers to plaintiff's amended petition filed and overruled, and both had answered, in effect, a general denial, and Essex, that he was an innocent purchaser for value, there was trial to a jury and verdict and judgment for plaintiff for the property, or its value, $2,000, and defendants bring the case here. No error is urged for Wails. The order of the trial court overruling Essex's demurrer to plaintiff's petition will be passed on here, although more than one year has elapsed since the making of such ruling. *Conner, Sheriff, v. Wilkey,* 41 Pac. (Kan.) 71.

In support of said demurrer, defendant contends the petition fails to state that Essex was in possession of the property at the commencement of the action. We think that the same may be fairly inferred. The petition substantially states that on February 9, 1904, plaintiff was and still is the owner of a lot of jewelry (describing it), of the aggregate value of $2,100; that she was and is entitled to the immediate possession thereof; that on said day in Oklahoma City said Wails represented to her that he owned a farm in Cleveland county of the value of

$3,000, and proposed to trade the same to plaintiff for said jewelry and $900; that he made certain flattering representations concerning said farm, as a result of which she sent her agent to Norman to examine it; that he there met Wails and went with his agent to look at it; that her said agent, after viewing another farm, shown by Wails' agent with intent to defraud, returned and reported to her that he had seen the farm and that the same was well worth $3,000; that, believing the same to be true, she thereupon traded with Wails and delivered him said jewelry; that he thereupon executed to her a deed to a farm other than the one her agent saw, and placed the same in the bank to be delivered to her on payment of $900, balance due on said trade; that, upon the discovery of the fraud, she rescinded said trade, demanded of Wails a return of her jewelry and informed him that he could secure said deed from the bank, and that he then and there refused and still refuses to return said jewelry; that he has since "delivered said jewelry to defendant W. F. Essex," who "now claims said jewelry or an interest therein"; that he is not an innocent purchaser for value without notice, but acquired the same for a consideration of a credit on an indebtedness pre-existing between himself and Wails and with constructive knowledge of the fraud of Wails; that said property was not taken in execution or on any order or judgment against plaintiff, or for the payment of any tax, fine, &c.; "that by reason of said false, fraudulent, and wrongful detention of said property" by said Wails and Essex, she had been damaged in the sum of $1,000—and prayed judgment for the return thereof or its value, together with said sum as damages.

As a suit in replevin cannot be maintained against one who is not in possession of the property, either actual or constructive, at the commencement of the action, it is therefore necessary for plaintiff to allege and prove, as stated in the syllabus of *Robb et al. v. Dobrinski,* 14 Okla. 563:

"(1) That he is the owner of the property, or has a special interest therein; (2) that he is entitled to the immediate possession thereof; (3) that the property is wrongfully detained by the defendant."

As to "detain" is by Webster's International Dict., 1907, defined to mean "to hold or keep in custody," we say that when plaintiff alleged that Wails "delivered" the property to Essex, "who now claims" the same, and by "said false, fraudulent, and wrongful detention of said property" she was damaged, it was, in effect, to say that Essex detained her goods at the commencement of the suit, that is, wrongfully held and kept them in his custody.

In support of the demurrer it is next urged that a demand on Essex for a return of the property was necessary and should have been made before suit and so alleged. Whether such demand was necessary depends on whether the petition states facts sufficient to show that Essex came wrongfully into possession of the property. If he did, no demand was necessary. On this point the petition discloses that prior to the suit, while plaintiff was owner and in possession of the property, she parted with it to Wails, the fraudulent vendee; that, upon discovery of the fraud, she immediately rescinded the trade; that, after said trade was rescinded, Wails sold and parted with possession of the property to Essex, in consideration of a credit on an indebtedness pre-existing between them. Under this state of facts, after said rescission, Wails had no title or right of possession and could convey none to Essex, whose possession was therefore wrongful. Mechem on Sales, sec. 928, says:

"The fraudulent vendee obtains possession of the goods wrongfully, and as to him, therefore, except where there is consideration to be previously restored, no formal notice of rescission or demand for the goods is necessary before beginning action for their recovery. The suit itself is a sufficient notice and demand.

"The same rule has been applied also to those who have obtained the goods from such vendee with notice of the fraud or without parting with value for them, upon the ground that they stood in no better or different situation than the vendee himself."

In *Farwell et al. v. Hanchett et al.,* 120 Ill. 573, the court said:

"It is quite well settled, that when goods have been obtained by fraud by a vendee, or otherwise unlawfully obtained, the ven-

dor, or true owner, may, without previous demand, maintain trover or replevin for the goods, against any person not holding them as an innocent purchaser for value. (*Butters v. Haughwout,* 42 Ill. 18; *Bruner v. Dyball, id.* 34; *Hardy v. Keeler,* 56 *id.* 152.) * * * The fraudulent vendee is not considered as a purchaser of the goods, but as a person who has tortiously got possession of them."

In *Koch et al. v. Lyon,* 82 Mich. 513, the court said:

"The main point relied on to reverse the judgment is that the circuit judge charged the jury that no demand was necessary before bringing suit. There was no error in this. Under the case made by the plaintiffs, the defendant's assignor, Visger, obtained possession of these goods by fraud, and it was not necessary for the plantiffs to demand the goods of him before bringing replevin to recover them. *Trudo v. Anderson,* 10 Mich. 357; *Carl v. McGonigal,* 58 *id.* 567 (25 N. W. Rep. 516); *Adams* v. *Wood,* 51 *id.* 411 (16 N. W. Rep. 788). An assignee takes no better title to the property than the assignor had, and if no demand would have been necessary as against Visgar before bringing suit, it would not be as against his assignee, who is not a purchaser for value. *Brown v. Brabb,* 67 Mich 17 (34 N. W. Rep. 403); *Farwell v. Hanchett,* 120 Ill. 573 (11 N. E. Rep. 875)."

It is unnecessary to cite further in support of a rule so well established.

We are, therefore, of opinion that it was unnecessary to allege a demand of a return of the goods before suit; that is, unless Essex, having bought the jewelry and paid therefor by a credit on an indebtedness pre-existing between himself and Wails, was thereby shown on the face of the petition to be an innocent purchaser for value and, as such, entitled to have his possession protected.

While there are cases holding to the contrary, the great weight of authority is to the effect that where goods obtained through fraud are sold in payment of a pre-existing debt of the fraudulent vendee, as here alleged, the owner may rescind the contract of sale with such vendee and recover from the purchaser.

As the petition shows nothing of value to have passed from

Essex to Wails before notice of his fraud, Essex was not a *bona fide* purchaser. 20 Cyc., p. 650, says:

"It is essential to constitute one a *bona fide* purchaser from a fraudulent grantee that valuable consideration shall have passed before notice of the fraud, or that something of value shall have been parted with, such as the surrender of valuable right, or the assumption of an irrevocable obligation. But the mere surrender of a pre-existing debt due from the grantee to such a purchaser without the actual payment of other consideration is not a valuable consideration within this rule, and the fact that he parts with a small sum of money in addition does not make it sufficient."

In *Henderson v. Gibbs*, 39 Kan. 679, two actions in replevin for some boots and shoes brought by Gibbs & Allen and Cramer Bros. against C. M. Henderson & Co. were consolidated. There was judgment for plaintiffs in the alternative. The facts were that Doan & Quetch in 1882 went into business on their own account as retail shoe dealers in Emporia, Kansas, on defendant's capital; that after the latter had retired, Doan purchased one of the bills of goods in question from the plaintiffs Gibbs & Allen, and the other from the plaintiffs Cramer Bros. The trial court found them to be fraudulent. Later Doan mortgaged the goods to defendant for what he owed them, and later sold his entire stock to them for the amount of his indebtedness to them. Plaintiffs then brought suit. The court said:

"Where personal property is fraudulently procured from an innocent owner, and the fraudulent vendee afterwards sells the property to an innocent and *bona fide* purchaser, except that the only consideration moving from the second purchaser to the fraudulent vendee is the payment or partial payment of a pre-existing debt due from the fraudulent vendee to the second purchaser, may the original owner treat the original contract made by him with his fraudulent vendee as void, or rescind the same, and recover the property from the second purchaser? Upon this question there seems to be some conflict of authority; and yet the great weight of authority seems to be in favor of an affirmative answer to the question. Upon the affirmative of this question, see the following among other authorities; *Sargent v. Sturm,* 23 Cal. 359; same case, 83 Am. Dec. 118, and note; *Root v. French,*

13 Wend. 570; same case, 28 Am. Dec. 482, and note; *Barnard v. Campbell*, 58 N. Y. 73; same case, 17 Am. Rep. 208; *Stevens v. Brennan*, 79 N. Y. 254; *Thurston v. Blanchard*, 33 Am. Dec., note 704, 705; *Poor v. Wodburn*, 25 Vt. 234; *Pope v. Pope*, 40 Miss. 516; *McLeod v. National Bank*, 42 Miss. 99; *Ratcliffe v. Sangston*, 18 Md. 383; *Hyde v. Ellery*, 18 *id.* 596, 501; *Spira v. Nonrthall*, 77 Ala. 137; *Linnard's Appeal* (Pa.) 3 Atl. Rep. 840; *Bradley v. Obear*, 10 N. H. 477; *Farley v. Lincoln*, 51 *id.* 577; *Sleeper v. Davis* (N. H.) 6 Atl. Rep. 201; *Johnson v. Peck*, 1 Woodb. & M. 334. See, also, 7 South. Law Rev. (N. S.) 549, 569; 15 Am. Law Rev. 363, 388; *Dickerson v. Tillinghast*, 25 Am. Dec. 528; *Williams v. Merle*, 25 *id.*, note 613; *Thompson v. Rose*, 41 *id.* 121; 1 Benj. Sales, (4th Am. Ed.) 570; Newark on Sales, sec. 205. See, also, *Ruth v. Ford*, 9 Kan. 26, 27.

"Upon the negative of the question, see the following cases: *Shufeldt v. Pease*, 16 Wis. 659; *Butlers v. Haughwout*, 42 Ill. 18. See, also, the following case as tending to support the negative: *Lee v. Kimball*, 45 Me. 172."

—And in the syllabus:

"Where personal property is fraudulently procured by purchase from an innocent owner, and the fraudulent vendee afterwards sells the property to an innocent and *bona fide* purchaser, except that the only consideration moving from the second purchaser to the fraudulent vendee is the payment or partial payment of a pre-existing debt due from the fraudulent vendee to the second purchaser, the original owner may rescind the contract made by him with his fraudulent vendee and recover the property from the second purchaser.

"Where personal property is fraudulently procured by purchase from an innocent owner, and the fraudulent vendee afterwards transfers the property to some third person, the title passes from the original owner, first to the fraudulent vendee and then to the third person subject only to the right of the original owner to rescind his contract with his fraudulent vendee and retake the property; and this only when he places or leaves both his fraudulent vendee and the second purchaser in the same condition they were in before their respective purchases."

—And affirmed the judgment of the lower court.

The ruling in this case was followed in *Schulein v. Hainer*, 48 Kan. 249, which two cases were precisely alike, except that the

first was replevin for the property, while the other was a suit for its value. After holding, in effect, in the Hainer case that either remedy was proper at the election of the original vendor after rescinding the sale, the court in the syllabus said:

"Where a vendee, by a fraudulent purchase, procures personal property from an innocent vendor, and then sells it to another for the consideration only of the payment of a pre-existing debt, the original vendor may treat all transfers as void, and recover in an action against the purchaser from the fraudulent vendee the value of the property."

—But reversed the case because the court instructed the jury that, before plaintiff could recover, he must establish by preponderance of the evidence that the defendant Hainer had knowledge of the fraudulent intent of Thomas, the fraudulent vendee. As these cases accord with sound sense and the weight of authority, we follow them.

We are, therefore, of opinion that Essex was not entitled to the protection of an innocent purchaser for value, and that the court did not err in overruling his demurrer. This is not in conflict with the holding in *Phelps, Dodge & Palmer Co. v. Halsell and Frazier,* 11 Okla. 1. That case was trover and went off on a motion for judgment on the pleadings, from which it appeared that the sale of the goods by plaintiff in error, plaintiff below, was made to Mrs. Clark on the strength of false statements made to certain mercantile agencies; that she kept them on sale at retail some three months before notice of her vendor's intention to rescind; that, in the meantime, and without notice of the fraud, the defendants in error, defendants below, took a chattel mortgage on them to secure a pre-existing indebtedness, sold them thereunder, and put the money in their pockets; that thereafter plaintiffs made demand of defendants for a return of the goods or their value, and, receiving neither, brought suit. The court was not there, as here, required to pass upon the rights of defendant; but, on the other hand, held only that, as the title was in Clark at the time the mortgage was executed, defendant came rightfully into possession of the property and the proceeds thereof under his mortgage; that

therefore, before suit for the return thereof, demand was necessary while defendant was in possession; and that, inasmuch as defendant was not in possession when the demand was made, the same was not sufficient to charge defendant with conversion; and, hence, the action must fail on that ground. It was further held, that, by failing to rescind for so long a time, plaintiff waived the fraud and his right to do so, to the prejudice of defendant's rights as an intervening creditor. In that case, had rescission been promptly made, as here, we think the court would have held as we hold—that Essex was not entitled to the protection of a *bona fide* purchaser.

It is next contended that the court erred in overruling the demurrer interposed by Essex at the close of plaintiff's testimony. In considering this assignment, as both parties, after the demurrer was overruled, proceeded with the trial and introduced further and additional testimony, if sufficient evidence was introduced to make out plaintiff's case, this ruling will not be disturbed. *Meyer et al. v. White, ante.*

From all the testimony in the case, the facts appear to be that in February, 1904, plaintiff lived in Oklahoma City and owned a stock of jewelry worth $2,000, in a trunk; that Wails lived in Norman, Oklahoma, and owned a farm a short distance from that town; that both desired to sell; that the result of their meeting was that plaintiff's agent, her husband, later met Wails in Norman and was introduced by him to a man whom Wails said was well acquainted with his farm and would show the same to him; that thereupon plaintiff's agent went with the man into the country to a point about where Wails had represented his farm to be, and was shown by the man a farm which he fraudulently represented as the farm Wails wanted to sell; that plaintiff's agent, relying thereon, returned to her and reported the same to be as represented by Wails and worth the price agreed upon; that on February 9, 1904, they traded, whereupon plaintiff delivered to Wails said stock of jewelry, trunk and all, which he took home to Norman, after executing to her a deed of a farm which he placed in the bank to be delivered to her on payment of $900 balance due on the trade;

that soon thereafter plaintiff and her said agent went to Norman and, in company with Wails, went to inspect the farm described in the deed, and found it to be practically worthless to her and not the farm which had been shown her agent; that she, in effect, rescinded the trade, told Wails that he could withdraw his deed from the bank, and demanded a return of the jewelry, which was refused; that the next day, which was Sunday, Wails sold the jewelry to Essex and the next day, February 15th, delivered the same to him, in consideration of a credit of $2,000 on a promissory note for $3,174.12 given by Wails to Essex on July 16, 1903; that Essex was aware of plaintiff's claim to the property a short time thereafter; and that, without demanding possession from Essex, she brought this suit.

In support of his demurrer, Essex contends the evidence fails to show that he was in possession of the property at the time the action was commenced, and for that reason, he says, the same should have been sustained. Not so, for the reason that, as the undisputed evidence discloses that possession thereof was delivered to him February 15, 1904, as a result of his purchase from Wails, such possession is presumed to have continued to the time of the commencement of the suit, December 9, 1904; this, for the reason, as stated in *Clements v. Hays*, 76 Ala. 280, "possession being a fact continuous in its nature, when its existence is once shown, it will be presumed to continue until the contrary is proved." This was the precise contention in *Nichols v. Lead & Zinc Co.*, 85 Mo. App. 584; the court said:

"It is insisted that there is no evidence that the appellant was in possession of the property at the time the suit was instituted. This contention is not well founded. The evidence is that the zinc company had been in possession of the chattels just prior to the institution of the suit, and that it sold them on the day it was instituted, but there is nothing to show when (if ever) the property was delivered to the purchaser. There being proof of a previous possession by the company, the onus was on it to show that it had parted with it prior to the judgment in the action."

See, also, 9 Ency of Ev., p. 909, and cases there cited. Also

*Robinson v. Rawlings*, 79 Ga. 354; *Drummonds v. The Com'rs, etc.*, 7 Rob. (La.) 234.

The cross-petition filed February 10, 1909, assigning that the court erred in overruling plaintiff's motion to modify the judgment rendered and entered January 31, 1908, cannot be by us considered, for the reason that the proceeding to correct said ruling was commenced in this court more than a year after the making thereof. *Leavenworth Lodge v. Byers*, 54 Kan. 323; *Durand v. Higgins*, 67 Kan. 110.

Affirmed.

All the Justices concur.