HIGGINS et al. v. LEWIS et ux.—137 S. W. (2d) 308.

Middle Section.   December 21, 1939.

Petition for Certiorari denied by Supreme Court, March 2, 1940.

Jacobs H. Doyle and Andrew J. Doyle, both of Nashville, for appellant.

John H. Lechleiter, of Nashville, for appellees.

FAW, P. J.   This case is before this Court on the appeal of Alton J. Lewis, a defendant below, from a decretal order, or judgment, of the Chancery Court of Davidson County, Part Two, committing him to jail until he shall comply with a decretal order theretofore made by said Court ordering and directing him to pay into the office of the Clerk and Master, within ten days from the entry of said order, the sum of $555.45, to be held by the Clerk and Master pending the further orders of the Court in this cause, or (in the alternative), to execute a bond, with sufficient surety to be approved by the Clerk and Master, in the sum of $555.45, conditioned to abide by and perform the orders and decrees of the Court in this cause.

A resume of the pleadings and proceedings in the case from its inception will, we think, be a material aid to an understanding of the issues presented to this Court upon the appeal from the aforesaid judgment.

The original bill was filed in the Chancery Court of Davidson County, Part Two, on January 21, 1939, by Frank Higgins and Joe Frank, as complainants, against Alton J. Lewis and his wife, Mrs. Zetta I. Lewis, as defendants. All the parties are resident citizens of Davidson County, Tennessee.

It is alleged in complainants' bill, and admitted in the answer of Alton J. Lewis, that, on March 7, 1938, complainants leased from E. J. Davidson, for a period of twelve months, a "pie-wagon," with all fixtures and equipment, located at 204 Shelby Avenue, Nashville, Tennessee, and known as "Davidson's Quick Lunch," with the right or option to purchase said business, on or before the expiration of said lease contract, for the sum of twenty-eight hundred dollars; that, by reason of the fact that complainants were engaged in other business, and because the defendant, Alton J. Lewis, had been, and was at said time, employed by the said Davidson in said pie-wagon or lunchroom, complainants continued said employment, under a written contract whereby they agreed to pay said defendant a weekly salary of twenty dollars for a period of twelve months, and at the expiration of said employment contract to pay him fifteen per cent of the net profits derived from the operation of said business, which contract is in words and figures as follows:

"This agreement made by and between Frank Higgins and Joe Frank, of Nashville, Tennessee, hereinafter called Employer, and A. J. Lewis, hereinafter called employee.

"The Employer hereby offers to employ the employee for a period of one year and the Employee hereby accepts said offer and the parties have agreed that the compensation for said employment shall be Twenty ($20.00) dollars per week, payable on Monday of each week hereafter for period beginning on the 7th day of March, 1938, and ending on the 6th day of March, 1939, and on March 6th, 1939, the Employee is to receive an additional compensation from the Employer of 15% of the net profits derived from the business during the period of time for which this contract covers. The Employee is to devote his entire time to the business and not more than twelve hours any one day.

"Witness our hands on this the 7th day of March, 1938.

"Frank Higgins
"Joe Frank, Employer
"Alton J. Lewis, Employee."

Complainants further allege that defendant Alton J. Lewis continued in their employment as aforesaid until December 24, 1938, "at which time he was discharged because of his manifest lack of interest in said business, as indicated by the fact that said business had been operated at a loss of $31.97 for the first twenty-four days of December, and its income had been reduced approximately 50% in comparison with October, but more especially because of the fact

that complainants had learned that said net profits or earnings from the operation of said business were not on deposit at said Woodland Street Branch of the American National Bank, as reported by said defendant, as will be hereinafter shown.''

It is further alleged in complainants' bill that, on the day that he was discharged, defendant (Alton J. Lewis) asserted that the sum of $576.37, constituting ''gross earnings'' of said pie-wagon business, was in the Woodland Street Branch of the American National Bank, at Nashville, to the credit of said business, but which said defendant declined to turn over to complainants; that, on investigation, it was ascertained that, although defendant had previously deposited the earnings of said business in said Bank, he had withdrawn said deposit from said Bank prior to his discharge, and that neither the ''gross earnings'' nor the ''net profits or earnings'' of said business were on deposit in said Bank, but were in the possession of said defendant Alton J. Lewis, or had been transferred by him to his wife and co-defendant, Zetta I. Lewis, and that they had refused to turn over same or any part thereof, to the complainants.

Complainants further allege in their bill, ''that said defendants are wrongfully and illegally withholding from them, or have appropriated to their own use, said sum of $576.37, representing a part of the assets and/or earnings of said ''Davidson's Quick Lunch;'' that neither of said defendants has or had a lien on, or any interest of any nature in, said funds, but same is the absolute property of these complainants; that each of said defendants is insolvent and nothing can be made out of either of them by an execution at law; and that, unless they are required by fiat of your Honor to pay said sum forthwith into the registry of this court, said sum of money will be lost to complainants to their irreparable injury and damage.''

Complainants prayed that subpoena issue requiring the defendants to answer the bill, and waived the oath of defendant Alton J. Lewis to his answer; that an injunction forthwith issue and be served upon the defendants, restraining and prohibiting them, and each of them, from withholding from complainants said sum of $576.37, or from spending, or otherwise disposing of said fund, or any part thereof, and that they be mandatorily required to forthwith pay said sum into the registry of the court to await the further orders of the court, and that upon the hearing of the cause said injunction be made perpetual; that the court, by decree, declare the complainants to be the absolute owners of said fund in the sum of $576.37, and that, if material, an accounting be had between complainants and defendants, and to this end that all necessary references to the Master be had.

Complainants then prayed for a discovery from Mrs. Zetta I. Lewis, to be made by response in her answer to a series of interrogatories propounded in the prayer of the bill; and, in conclusion, complainants prayed for general relief.

Upon a preliminary ex parte application made on the day the bill was filed, the Chancellor granted a fiat as follows:

"Upon the complainants executing an injunction bond in the sum of $250.00 conditioned as required by law, issue a Writ of Injunction restraining and prohibiting the defendants from disposing of said fund of $576.37 or any part thereof and notify the defendants that the application for the Mandatory Injunction prayed in the second paragraph of the prayer of the foregoing bill is set for hearing at twelve o'clock M. Friday, January 27, 1939."

The injunction bond was executed and the injunction writ and subpoena to answer issued, and service thereof was accepted for the defendants by their solicitor on January 21, 1939.

Defendant Zetta I. Lewis filed a "demurrer and answer" to complainants' bill, and her said answer purports to be a categorical response to the several interrogatories propounded to her by complainants in the prayer of their bill as aforesaid. Her answer amounts to a denial that she has in her possession, or under her control, the funds realized from said pie-wagon business, or any part thereof, or any funds belonging to the complainants, or in which the complainants have any interest.

Defendant Alton J. Lewis, in his answer, states that for some time after he was employed by complainants to operate said pie-wagon, he, of his own accord, deposited the "funds of the said business" in the Woodland Street Branch of the American National Bank, but that later, and prior to his discharge, he "became scared of the statements of the complainants that they were going to take said funds and kick your defendant out in the middle of Shelby Avenue and give him nothing," and "at this time he withdrew said funds and kept same in the cash register at the place of business in the daytime and took said funds home with him at night;" that on the night of December 24, 1938, complainant Higgins came to the said place of business with a deputy sheriff, and the deputy sheriff arrested him (Alton J. Lewis) on the instructions of complainant Higgins, and while complainant Higgins "robbed the cash register of all the funds;" that he (Lewis) requested to be allowed to witness the taking of said funds, and also requested said Higgins to give him a receipt for same, which "he was denied;" that "all the funds of the business was in said register when complainant Higgins robbed said cash register, and the same was taken out by the said complainant Higgins, which he and the other complainant are now seeking this defendant to repay to them by this proceedings."

Defendant alleges that "every penny" of said funds was accounted for and was at said business on the night of December 24, 1938, when the complainant Higgins, took all of the money out of cash register as aforesaid.

The answer of defendant Alton J. Lewis amounts to an admission

that he had all the funds belonging to the said pie-wagon business in his possession until the night of December 24, 1938, and an allegation that said funds were taken out of his possession on that night by complainant Higgins and have never been returned to him, and a denial that he or his wife now has any of said funds, or that he or his wife has had same since they were taken from him by complainant Higgins as aforesaid.

The foregoing is an outline of the material allegations and denials of the pleadings. The bill and the answers are replete with detailed charges, counter-charges, and denials with respect to alleged improper and unlawful actions and conduct of the parties, respectively, but we think that, *for the purposes of the inquiry now before this Court,* the foregoing statement sufficiently defines the ultimate material issues made by the pleadings below.

Admittedly defendant Alton J. Lewis was an employee of complainants, and as such held the funds in question in a trust capacity. They were and are the property of complainants, and complainants allege that defendant Alton J. Lewis has them in his possession or has wrongfully disposed of them.

On the other hand, defendant Alton J. Lewis denies that he or his co-defendant (his wife) has said funds, and he alleges that they were forcibly taken out of his possession by complainant Higgins and have never been returned to him. Such appears to be the issue presented by the pleadings.

On January 27, 1939 (the date designated by the fiat of the Chancellor for the hearing of complainants' application for a mandatory injunction), a decretal order was made and entered in the cause as follows:

"This cause came on to be further heard on notice on this January 27, 1939, before Chancellor James B. Newman on the original bill, the demurrer of Mrs. Zetta I. Lewis thereto, the answers of the defendants thereto and exhibits attached to the answers:

"Upon consideration whereof it is ordered, adjudged and decreed:

"1—That the demurrer of the defendant, Mrs. Zetta I. Lewis, be and is overruled, to which action of the court the said defendant excepts.

"2—That the defendant Alton J. Lewis, be and is ordered and directed to pay into the office of the Clerk and Master within ten days from the entry of this order, the sum of $555.45, the same to be held pending the further orders of the court in this case. In lieu of the payment of said sum into the office of the Clerk and Master, the defendant is permitted within ten days from the entry of this order, to execute a bond with sufficient surety to be approved by the Clerk and Master in the sum of $555.45 conditioned to abide by and perform the orders and decrees of the Court in this cause.

"It is ordered, adjudged and decreed by the Court by consent

of the complainants and defendants, as evidenced by the signatures of their solicitors, that the fund of $20.92 now in the Woodland Street Branch of the American National Bank to the credit of Davidson's Quick Lunch, shall be paid by said bank into the office of the Clerk and Master and his receipt taken therefor, the same to be held pending the further orders of the Court in this case.

"To the foregoing action of the Court, the defendant excepts."

On February 15, 1939, the complainants, Higgins and Frank, filed a petition in this cause alleging, in substance, that defendant Alton J. Lewis had failed and refused to comply with the aforesaid mandatory order of the Court, and had willfully disobeyed the same, and praying for an attachment for the body of said defendant, and that he be adjudged in contempt etc. The attachment issued and was executed, and the alleged contemnor was admitted to bail pending the hearing upon said petition, but before the day set for such hearing, said Alton J. Lewis filed a petition (accompanied by a transcript of the record) in this Court praying for the writ of certiorari to bring up the record in the cause, to the end that the aforesaid interlocutory order granting a mandatory injunction "be vacated and for nothing held," and for the writ of supersedeas to stay all further proceedings under said mandatory injunction.

This Court (Judge Crownover dissenting) denied said petition, and declined to issue either of the writs sought thereby, for reasons stated in a "memo opinion" filed on March 4, 1939, and in which it was further stated that "if the Chancellor should render an erroneous judgment against the defendant on the hearing of the contempt proceedings, the defendant would have his remedy by appeal."

Defendant Alton J. Lewis filed an answer, and thereafter (before the hearing) an amended answer, to "the contempt proceedings," and denied that he had willfully disregarded and deliberately ignored, omitted, failed and refused to comply with the aforesaid order or decree requiring him to pay forwith $555.45 or execute a bond. He alleged that he had been earnestly pursuing every effort that it was "humanly possible" for him to pursue to raise the $555.45 or to get someone to sign his bond; that he had exhausted every means to comply with said order, but his efforts had been without success; that if he had the money he would comply, or if he could secure some one to supply the bond, guaranteeing the money, he would do so.

And, in addition to the aforesaid allegations with respect to his unsuccessful efforts and his inability to comply with the Court's mandatory injunction, said defendant further asserted in his said answers, in substance, that he did not owe the complainants any sum of money whatever, but that, in any event, the only judgment the Court could render against him in this case was a judgment for debt, with an award of execution for the collection thereof, and that

the Court was without power to imprison him for debt; and he relied upon all of the defenses set forth in his answer to the original bill.

Thereafter the matter of the alleged contempt was heard by Special Chancellor Hooker, whose written findings and opinion were filed as follows:

"I have given this case careful consideration and it has caused me no little concern in view of the fact that this proceeding involves the liberty of the defendant Lewis. Before reaching my decision, I read all of the Tennessee cases that I could find that were in point, or to which I was referred by counsel, including the unreported case of James B. Smith, Administrator, v. A. D. Fitzgerald, the pertinent portions of the opinion in which were furnished to me by defendant's counsel.

"As stated from the bench, the Court had no difficulty in finding that the complainant Higgins did not take the money in question from the pie wagon on the night of December 24th, or at any other time. The overwhelming preponderance of the evidence sustains the complainant's position that the money was not there at that time. The complainant testified that it was not, and he has shown a good character. Complainant's auditor, who impresses the Court as a high class man, testified that he was informed by the defendant upon the morning of the day on which complainant was said to have taken the money from the cash register that the money was in the bank; and to the same effect is the testimony of the officer. That is the clear inference from the testimony of Judge Draper. The defendant's fantastic insistence is not supported by evidence which the Court is inclined to accredit, and in the opinion of the Court the insistence was conceived by defendant in an effort to avoid a charge of embezzlement. However, the Court has been principally concerned with the rule announced in Crowder v. Hayse, 9 Tenn. App., 55, 62, in which it is stated:

" 'The law is, that the judgment itself must affirmatively show and set out the ability of the defendant to comply with the order.'

"As far as this contempt proceeding is concerned, the defendant could have completely exonerated himself by admitting that he did not have the money in question because he had spent it, but of course he would have this involved himself on a charge of embezzlement. He has elected to insist that he had the money on December 24th, and has testified that he spent no part of it and applied no part of it to his own use since that time. The effect also of the testimony of his wife, is that they spent no part of the money belonging to the pie wagon since that time for living expenses, but have lived on what she has been able to make and previously saved. To permit the defendant to exonerate himself from a charge of embezzlement by his unbelievable account of what occurred on the night of December 24th, and to now relieve himself from a contempt charge by taking the position, in

effect, that if his first position was false, still he could not be held for contempt because of his inability to comply with a previous order of this Court, would be to accord to defendant too many liberties. Therefore, the Court is of opinion from the evidence in this case that complainant did not take the money in question from defendant and that it would necessarily follow from the undisputed evidence that defendant still has said money in his possession, and hence is in position to comply with the mandatory injunction heretofore issued compelling him to pay said money into Court. A decree will be entered so finding and committing the defendant to jail in accordance with Section 10121 of the Code of Tennessee, until he complies with the orders of this Court.

"Hooker,
"Special Chancellor."

Thereupon the decree of the Court was entered as follows: ·

"Be it remembered that this cause came on to be and was heard on this March 7th, 1939, and previous days of the term before Special Chancellor, John J. Hooker, upon the whole record and especially upon the petition heretofore filed by complainant on February 15, 1939, charging the defendant Alton J. Lewis with contempt; the answer of said defendant to said petition filed on February 27, 1939, and the oral testimony of witnesses heard in open Court;

"From all of which it appeared to the Court and the Court found as a fact that the defendant, Alton J. Lewis, has failed to comply with the decree of this Court appearing in Minute Book 39, page 172, and entered on January 27, 1939, by the terms of which he was required to pay the sum of $555.45 into the hands of the Clerk and Master of this Court, or to give a bond in lieu thereof as provided by said decree, and that the defendant from the evidence in this case, has the power and ability to comply with said order and has wilfully failed to do so.

"It is therefore ordered, adjudged and decreed by the Court that defendant and contemnor, Alton J. Lewis, be and he is hereby sentenced to jail until he shall comply with said decree of the Court entered January 27, 1939, in Minute Book 39, page 172 in accordance with section 10121 of the Code of Tennessee. The Clerk and Master will issue a mittimus accordingly.

"A memoranda opinion in this cause, authenticated by the signature of the Special Chancellor is ordered filed and made a part of the record in this case.

"To the foregoing action of the Court in holding him in contempt of court and sentencing him to jail, the defendant and contemnor Alton J. Lewis, excepts and his solicitors stated in open court that they expected to make a motion for a new trial within the time prescribed by law. The defendant was allowed until and including March 11, 1939, within which to prepare and file his motion for a

new trial, and pending the hearing on said motion for a new trial defendant and contemnor will execute an appearance bond conditioned as required by law in the penalty of $500.00.

"It is further ordered by the Court by consent of the parties, that the defendant and contemnor be allowed until three o'clock P. M., on the day of the entry of this decree in which to execute the bond required herein, but upon his failure so to execute said bond with good and sufficient surety acceptable to the Clerk and Master, he will be taken into custody by the Sheriff.

"The defendant will pay the costs of this proceeding for which execution may issue."

A motion for a new trial on behalf of defendant Alton J. Lewis was seasonably filed, and was overruled by the Court, and said defendant excepted and prayed an appeal to this Court, which was granted, and the appellant perfected his appeal by filing the oath prescribed for poor persons and a bill of exceptions.

Pursuant to an order of the Chancery Court so directing, the appellant executed an appearance bond in the penalty of $500 and was admitted to bail pending his appeal to this Court.

And now the case is before us for hearing de novo, upon the record from the court below, but with a presumption that the judgment or decree of the Chancery Court was correct, unless we find that the evidence preponderates against that decree. Code, Section 10622; McCalla v. Rogers, 173 Tenn., 239, 242, 116 S. W. (2d), 1022; Joest v. John A. Denie's Sons Co., 174 Tenn., 410, 416, 126 S. W. (2d), 312.

There are nine assignments of error on behalf of the appellant. The first assignment is that: "The Court erred in overruling this defendant's motion for a new trial as set out fully in the order overruling the motion on pages 66, 67, 68, 69 and 70 of the transcript and also same motion as set out fully again in the Bill of Exceptions on pages 261, 262, 263, 264 and 265 of the transcript."

This (the first) assignment is overruled for the reason that it is too general and indefinite. The appellant's reasons why a new trial should have been granted must be specified in an assignment asserting error in the overrulement of a motion for a new trial. Thurman v. Bradford, 3 Tenn. Civ. App., 474; Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn. App., 170, 173; Stone v. Stonecipher, 7 Tenn. App., 614, 617; Taylor v. Taylor, 14 Tenn. App., 101, 121; Gulf Refining Co. v. Frazier, 15 Tenn. App., 662, 703; National Life & Accident Insurance Co. v. American Trust Co., 17 Tenn. App., 516, 527, 68 S. W. (2d), 971; Jordan v. Finger, 19 Tenn. App., 365, 368, 89 S. W. (2d), 183; Wilson v. Minnesota etc. Association, 36 Minn., 112, 30 N. W., 401, 1 Am. St. Rep., 659; 2 Ency. Pl. & Prac., page 953.

The remaining eight assignments of error may be resolved into two propositions, the first of which is, in substance, that the aforesaid

order of January 27, 1939 (known in the record as the mandatory injunction), commanding defendant Alton J. Lewis to pay into the office of the Clerk and Master the sum of $555.45 or (in the alternative) to execute a bond in the sum of $555.45, conditioned to abide by and perform the orders and decrees of the Court in this cause, was in excess of the jurisdiction and power of the Chancery Court, and therefore void, for the reason that it was made, over the objection of the defendants, on the pleadings and exparte affidavits, and in advance of a trial of the issues made by the pleadings.

It is true that mandatory injunctions are not favored and "will rarely be granted" (State Board of Medical Examiners v. Friedman, 150 Tenn., 152, 165, 263 S. W., 75); but the jurisdiction of the chancery courts to grant mandatory injunctions "is firmly established," and the power of the Chancellors to grant mandatory injunctions, in proper cases, is recognized in equity practice. Gibson's Suits in Chancery (4 Ed.), sec. 803; 1 High on Injunctions (2 Ed.), sec. 2; Union Planters' Bank & Trust Co. v. Hotel Co., 124 Tenn., 649, 658, 139 S. W., 715, 39 L. R. A. (N. S.), at page 580; Post v. Railroad, 103 Tenn., 184, 216, 52 S. W., 301, 55 L. R. A., 481; Condon v. Maloney, 108 Tenn., 82, 86, 65 S. W., 871.

As we read the complainants' bill in the instant case, it is not an action of debt or assumpsit, but the theory of the bill is that defendant Alton J. Lewis is withholding funds held by him in a fiduciary or trust capacity, which funds are the property of complainants, and of which they are entitled to immediate possession; and the prayer of the bill is framed on that theory.

In Gibson's Suits in Chancery (section 765 of the 1st Edition and section 767 of the 4th Edition) it is said:

"It may be stated as a general rule that to obtain an order upon a defendant to pay money into Court before the final hearing, it must appear that he who asks for such an order has an interest in the money, and that he who holds it has no equitable right to it, but holds it in trust; and these facts must so appear as not to be open to any further controversy; and must, ordinarily, appear by the admission of the defendant in his answer, or in an affidavit, or in a written stipulation. The Court will not make such an order where the defendant either denies the possession of a trust fund, or denies the the complainant's right to it.

"The ordinary cases wherein a defendant will be ordered to pay money, or choses in action, into Court before final decree, are when a guardian, executor, administrator, trustee, or other fiduciary, admits in his answer that he has trust funds in his hands belonging to the complainant, in which case the Court will, on motion of the latter, order such funds to be paid into Court. This order will be made on a defendant who is a trustee by implication, as well as an express trustee; and where only a part of the fund claimed is admitted by the

defendant to be in his hands, the Court will order that part to be paid in. The Court will order trust funds to be paid into Court, without any allegation, or proof, that there has been any abuse of the trust, or that the fund is in danger pending the litigation; but in all such cases it must clearly appear that the fund is a trust fund, and not a mere debt."

The statement in the above quoted text of Gibson that, "The Court will not make such an order where the defendant either denies the possession of a trust fund, or denies that complainant's right to it," is made upon the authority of 2 Daniel's Chancery Practice, 1780, and, although it is there stated that "it must also be admitted, that there is a balance actually in the hands of the defendant," it is also stated on the same page that, "the plaintiff will not be allowed to make use of affidavits to supply any defect in the answer; the rule of the Court being, that the order shall be made upon the defendant's admissions alone. This rule, however, must be understood as applying to proof of the plaintiff's title; for it has frequently been decided that though the Court will not, upon an application of this sort, allow affidavits to be read in support of the plaintiff's title, it will receive affidavits to verify collateral facts." See 2 Daniel's Chancery Practice (5 Ed.), star page 1780, bottom page 1702.

■ From *all of which*, we are inclined to the opinion that the meaning of the phrase "denies the possession of a trust fund," as used in the text last above quoted from Gibson, is that defendant denies that the fund alleged to be in his possession is a trust fund. The effect of the defendant's answer, in the instant case, is to admit that the fund involved in this case was, when in his hands, a trust fund; and therefore it was, we think, competent for the Chancellor to consider, in disposing of the complainants' application for a mandatory injunction, affidavits touching the defendant's allegation that the trust fund had been forcibly taken from his possession by one of the complainants.

The mandatory injunction in the instant case is quite analogous, in its operation and effect, to the appointment of a receiver; and in Roberson v. Roberson, 3 Lea, 50, 53, the Court said:

"There can be no question that upon a bill filed for the purpose, making the proper averments, the Chancellor would have the power at once to appoint a receiver and take the assets out of the hands of an administrator or other trustee, in advance of a hearing of the cause; such orders are made as injunctions and other extra-ordinary process are granted, and it is no objection to the existence of the power that it is exercised upon an ex parte hearing."

■ We held in our opinion filed on March 4, 1939, declining to supersede the aforesaid order granting the mandatory injunction of January 27, 1939, that such order was within the jurisdiction and power of the Chancery Court, and, upon a re-examination of the

660

subject, we find no reason to depart from that ruling. The appellant's 2nd, 3rd, and 7th assignments of error, through which he complains of the mandatory injunction of January 27, 1939, are overruled.

Through his 4th, 5th, 6th, 8th and 9th assignments, the appellant asserts, in substance and effect, that the evidence preponderates against the decree of the Special Chancellor finding and adjudging that defendant Alton J. Lewis is able to obey and comply with the aforesaid mandatory injunction of January 27, 1939, and committing him to jail until he shall comply with said decree.

In his aforesaid decree, the learned Special Chancellor specifically predicated his action upon the power granted by Section 10121 of the Code (Section 4108 of the Code of 1858), which Section relates to civil contempts. There is a distinction between criminal and civil contempts. 12 Am. Juris., page 392, sec. 6; Note, 6 Ann. Cas., page 535; Gompers v. Bucks Stove & Range Co., 221 U. S., 418, 31 S. Ct., 492, 55 L. Ed., 797, 34 L. R. A. (N. S.), 874; Ramsay v. Ramsay, 125 Miss., 185, 87 So. 491, 14 A. L. R., 712, 716.

"While particular acts do not always readily lend themselves to classification as civil or criminal contempts, a contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." McCrone v. United States, 307 U. S., 61, 59 S. Ct., 685, 686, 83 L. Ed., 1108, 1110.

In the McCrone case, supra, it was held that, "the judgment of contempt was civil *and appeal from it was governed by the statutory rules of civil appeals."* (Italics ours.)

The distinction between criminal and civil contempts is observed in our Code, wherein Section 10120 provides *punishment* by fine, not exceeding $50, and imprisonment not exceeding ten days (either or both), for the contempts defined in Section 10119; and Section 10121 provides appropriate *coercive* procedure in cases of civil contempts; that is, "if the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, he may be imprisoned until he performs it" (Section 10121); "if it consists in the performance of a forbidden act, the person may be imprisoned until the act is rectified by placing matters and person in statu quo, or by the payment of damages" (Section 10122).

In Cash v. Quenichett, 5 Heisk., 737, 741, the Court said:

"The general law upon the subject of contempts provides, that where the contempt consists in an omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it: Code, sec. 4108. The resort to this extreme remedy under this section presupposes the exercise of a sound judicial discretion upon the question whether or not the act ordered to be performed is in fact within the party's power of performance. For if it be not, the power of imprisonment under the law does not exist."

And in Clark v. Clark, 152 Tenn., 431, 440, 278 S. W., 65, 67, it is said that: "Where a party is guilty of willful disobedience, or obstinacy to an order of the court or judge, the court or judge is empowered to punish for contempt and sentence him to imprisonment until the specified sum and costs are paid. [Citing authorities]. Inability to comply with the order or decree is an answer to a rule. to enforce it, and when it is made to appear the defendant is entitled to be discharged. [Citing authorities.]"

In the last cited case it was also held that "the burden is on the defendant to show his inability to pay or comply with the decree."

In the instant case, defendant Alton J. Lewis admits that he had the money in question in his manual possession and control on December 24, 1938, and the only explanation he attempts to offer of his failure to have it in his possession or under his control at the time the mandatory injunction was ordered, or at the time of the hearing of the citation for contempt, is that complainant Higgins took it from the cash register in the "Pie Wagon" on the night of December 24, 1938. It was stipulated at the trial below that, if defendant Alton J. Lewis "is required to pay anything in," the amount stated in the order of January 27, 1939 ($555.45), is the correct amount.

After an attentive and careful examination of the entire record, we concur in the finding of the Chancellor that the preponderance of the evidence sustains the contention of the complainants that complainant Higgins did not take said money from the cash register, or from the possession of the defendant Alton J. Lewis, on the night of December 24, 1938, or at any other time. Defendant Alton J. Lewis admits that the money in question was all in his possession on December 24, 1938, and he denies that he disposed of any part of it after that time. In the absence of proof that the money passed out of his possession after that time, it will be presumed that it is still in his possession.

It is a rule of evidence that "possession being a fact continuous in its nature, when its existence is once shown, is presumed to continue until the contrary is proved." 20 Am. Juris., page 207, sec. 208. Accordant: 1 Jones on Evidence (2 Ed.), sec. 268; 9 Ency. of Evidence, page 909; 22 C. J., pages 90, 91, sec. 29; Wails v. Farrington, 27 Okl., 754, 116 P., 428, 35 L. R. A. (N. S.), 1174, 1181; Nichols v. Dodson Lead & Zinc Co., 85 Mo. App., 584, 586; Sanford v. Millikin, 144 Mich., 311, 107 N. W., 884, 885.

Where money is shown to have been in the hands of the County Treasurer, the presumption, in the absence of proof that it was ever paid out, is that it is still in his hands. Spaulding v. Arnold, 125 N. Y., 194, 26 N. E., 295.

The rule thus announced in the New York case just cited, was applied in the cases of State v. Cole, 13 Lea, 367, 372, and Yoakley v. King, 10 Lea, 67, 72, in each of which cases was a controversy with

respect to whether the sureties on the bond of the clerk of a court for his first term or the sureties on the bond for his second term were liable for certain sums which had been received by him as clerk during his first term. The Court held that the presumption, in the absence of proof to the contrary, was that the money was in the hands of the clerk at the commencement of his second term.

The testimony of defendant Alton J. Lewis at the trial of the contempt charge below was that he, at that time, had only "a dollar or two" in money; that he had asked "everybody he could think of" to sign the bond required by the Court's order of January 27, 1939; that if he had the money, or could get any one to sign the bond as surety, he would comply with the Court's order; and that the only reason for his failure to obey the order of the Court was his inability to do so.

But the entire sum of money involved in the controversy was admittedly in the possession of the alleged contemnor on December 24, 1938, and unless he has in some manner been deprived of, or parted with, the possession thereof since that time, he is able to comply with the Court's order of January 27, 1939. As held in Clark v. Clark, supra, 152 Tenn., at page 440, 278 S. W., at page 65, the burden was on him to prove his inability to obey the order of the Court, and, in the light of the record facts, as before indicated, we do not think his statement that he is now without means to comply with the Court's order will suffice to discharge that burden.

We see no occasion to review at length, in this written opinion, the testimony of the several witnesses in the case. The statute, Section 10620 of the Code, requiring this Court to make written findings of facts, contemplates that the Court shall find the ultimate, determinative facts upon which its conclusions of law are predicated, and not mere matters of evidence, nor all the separate and disjointed facts which they may consider in arriving at a result. Anderson County v. Hays, 99 Tenn., 542, 552, 42 S. W., 266; Melody v. Hamblin, 21 Tenn. App., 687, 704, 115 S. W. (2d), 237; Badger v. Boyd, 16 Tenn. App., 629, 645, 65 S. W. (2d), 601; Julian v. American National Bank, 21 Tenn. App., 137, 163, 106 S. W. (2d), 871.

It results that all of the appellant's assignments of error are overruled and the aforesaid decree of the Chancery Court adjudging defendant Alton J. Lewis in contempt of that Court and committing him to jail until he shall comply with the aforesaid order of. January 27, 1939, and taxing him with the costs of the contempt proceedings, is affirmed, and the cause (so far as it has been brought up by the appeal) will be remanded to the Chancery Court of Davidson County, Part Two, for the execution of said decree, and for such further proceedings as may be necessary or proper in the cause.

The costs of the appeal will be adjudged against the appellant Alton J. Lewis.

Crownover and Felts, JJ., concur.