IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 24, 2001 Session

## STATE OF TENNESSEE v. THOMAS E. COWAN, JR.

**Appeal from the Circuit Court for Carter County**
**No. S15103      Lynn W. Brown, Judge**

_____

**No. E2000-02705-CCA-R3-CD**
**September 24, 2001**
_____

The defendant, Thomas E. Cowan, Jr., was found guilty of contempt. The trial court imposed a jail sentence of 10 days, six of which were suspended. In this appeal of right, the defendant argues that the evidence was insufficient; that the trial judge should not have acted as a witness; and that the sentence was excessive. Because the evidence was insufficient, the judgment is reversed and the cause dismissed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed; Cause Dismissed**

GARY R. WADE, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Thomas E. Cowan, Jr., Pro Se.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Dennis Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 17, 2000, Sharon Nave, a probation officer, appeared before the trial judge charging Neil Friedman, who was represented by the defendant, a licensed attorney, with a violation of probation. Eight days later, just before a hearing to determine Friedman's release status, the trial judge provided a factual summary of the occurrence for the record:

Last Thursday Ms. Nave, the probation officer who's here, came to my office with a warrant for Violation of Probation. And the warrant alleges that – that's the second warrant. He has violated the law and has been arrested for Aggravated Assault, felony, in Sullivan County. And Ms. Nave gave me a strange message when she came with the warrant that, Mr. Cowan, you've been calling her and calling her and that you wanted me to call you before I issued the warrant. I've never seen a request

like that, and – and I don't ask your permission or consider information before I issue warrants. Never have. Don't see any point to it. So I didn't call you, and issued the warrant. And within an hour, your secretary called the office and said you wanted to come over and talk to me. And I told Charlotte White, your secretary, that I did not want to talk to Mr. Cowan about the case, about Neil Friedman. And so she put you on the phone and you started telling me some information. And I asked you, Mr. Cowan, "is this ex parte?" And you said that in a manner it is, and I wished you a good afternoon and hung up on you.

After the trial judge completed his statement, the defendant stipulated the summary as "true."

At the hearing regarding Friedman's release status, the trial court observed that Friedman had since been convicted of assault and had allegedly lied to his probation officer. The trial court ordered that Friedman be held in jail without bail until a hearing in October of 2000. The defendant questioned the propriety of a probation revocation proceeding, arguing that Friedman's period of probation had ended well before the issuance of the warrant. Afterward, the following exchange took place:

| | |
|---|---|
| THE COURT: | [A]nything else regarding Mr. Friedman? |
| MR. COWAN: | Well, Your Honor, I don't think this is in the best interest of society but . . . |
| THE COURT: | You're entitled to your opinion . . . |
| MR. COWAN: | Just a side view. |
| THE COURT: | . . .and I'm entitled to my opinion. Between your opinion and my opinion. . . |
| MR. COWAN: | Yours controls. |
| THE COURT: | . . .my opinion counts. That's the way it is. Mr. Friedman has made these facts and gotten himself into this mess. |
| MR. FRIEDMAN: | Your Honor. . . |
| THE COURT: | I'd suggest you don't interrupt me. |
| MR. FRIEDMAN: | Sorry, Your Honor. |
| THE COURT: | And – and this is the consequence. So that's all regarding Mr. Friedman. |
| MR. COWAN: | Okay. |
| THE COURT: | Mr. Cowan, why should the Court not find you in contempt of court for engaging in an ex parte conversation? |

The defendant, who appeared to be unaware of the possibility of a contempt citation, stated that he had intended to ask the trial judge to consider either releasing Friedman to participate in an undercover operation the TBI had arranged or to refrain from service of the warrant until the appearance date for the revocation hearing. He explained that he asked the probation officer to have "the judge to call me before he decides to hold [Friedman] without bond" so that he would have the opportunity to explain the mitigating circumstances. The defendant submitted that at the time, "the

TBI did not want . . . the State Attorney General's Office to know about their" involvement in the drug investigation. The trial judge observed that some two years earlier he directed that Friedman cease contact with him, his family, or staff outside of the courtroom. At the conclusion of the hearing, the trial judge remarked as follows:

> Well, whether you're concerned about drug interdiction or not, you can't violate the rules of ethics. That's fixing a case. And the thing that concerns me is we went through this on Mr. Friedman back in June of 1998 after his – in this DUI case. After the Court of Criminal Appeals affirmed his conviction and sentence then people started trying to fix the case with me.[1] And it's in the record from the hearing in June the 24th of 1998. I had a bank president call my office and try to intervene on his behalf. I stated that in the record at that time. One of the members of the Industrial Board, which really made me mad, tried to influence me by going to my mother, and – and she had been widowed within the last year. And then one of Mr. Friedman's employees went up to the family store and tried to get my brother to intervene. And as a result of that in the hearing on June 24th, the Court put Mr. Friedman – that 's how he got on house arrest as – was bond monitoring with a court order. Specifically it was – it was placed in a minute entry, and I have the transcript of what I dictated into the minutes. On page five (5) of the transcript, "The Clerk is directed to make a minute entry in the record. The Court orders that you (speaking to Mr. Friedman) "are not to contact me, the Judge, you're not to contact any of my family or staff outside the courtroom, and you're not to have anybody else do that. And if you do that, I'll find you in contempt of court and put you in jail whether you're on bond or not." The Court's concern was that the probation report reflects he's got assets of five million dollars ($5,000,000.00), and setting a bond for him is – is something that is not of particular significance like it is most people. And I go on, "Plain and simple, I'm not going to tolerate this kind of stuff," so forth. And – but you did the same thing that I instructed him not to do. You contacted the Court in an ex parte conversation. That's called fixing the case.

Initially, the state asserts that the appeal should be dismissed because the notice was not timely filed. Rule 4 of the Tennessee Rules of Appellate Procedure, however, requires the notice

---

[1] See <u>State v. Neil M. Friedman</u>, No. 03C01-9704-CR-00140 (Tenn. Crim. App., at Knoxville, April 14, 1998). Application for permission to appeal denied December 21, 1998. On December 22, 1998, the trial court reduced the six-month sentence for DUI to 120 days based upon Friedman's extensive in training programs, the performance of community service, and successful drug screens. On January 4, 1999, Friedman began service of his sentence. One and one–half years later, the trial judge ordered an extension of the probation for seven months, 29 days because the defendant had failed to prepare the probation order. The revocation warrants here were based upon the extended probationary period. Friedman argued his sentence had expired and an assistant district attorney pro tem, who was appointed when the district attorney declined to participate because Friedman was a witness in another case, agreed with the defense. Nevertheless, the trial court ruled that the probationary terms were in existence at the time the violations occurred and ordered that the balance of the sentence be served. Friedman appealed. <u>State of Tennessee v. Neil Friedman</u>, No. E2000-02877-CCA-R3-CD (Tenn. Crim. App., at Knoxville). The brief filed by the state attorney general concedes that the sentence had expired and the trial court had no authority to revoke the probation.

to be filed within 30 days of the judgment. Here, the trial court imposed judgment on August 25, 2000. The notice of appeal was filed 31 days later on September 25, 2000. Because the due date of the notice, September 24, 2000, fell on a Sunday, it may not be included in the calculations. See Tenn. R. App. P. 21(a). The notice was timely filed.

The contempt powers of courts are established by statute: "For the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code." Tenn. Code Ann. § 16-1-103. Tennessee Code Annotated § 29-9-102 provides as follows:

> **Scope of power.** – The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;
> (2) The willful misbehavior of any of the officers of such courts, in their official transactions;
> (3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;
> (4) Abuse of, or unlawful interference with, the process or proceedings of the court;
> (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or
> (6) Any other act or omission declared a contempt by law.

Criminal contempt is distinguished from civil contempt in that the latter is wholly remedial, serves a private purpose, and is not intended as a deterrent to offenses against the public. Higgins v. Lewis, 23 Tenn. App. 648, 137 S.W.2d 308 (1939). The purpose of civil contempt is to enforce a civil remedy. Gunn v. Southern Bell Tel. & Tel. Co., 201 Tenn. 38, 296 S.W.2d 843 (1956). A criminal contempt is designed to preserve the power and dignity of the court and to vindicate law and society. Shiflet v. State, 217 Tenn. 690, 400 S.W.2d 542 (1966); McCraw v. Adcox, 217 Tenn. 591, 399 S.W.2d 753 (1966); Robinson v. Air Draulics Engineering Co., 214 Tenn. 30, 377 S.W.2d 908 (1964). Direct contempt is based upon an individual's actions committed in the presence of the court and may be punished summarily; indirect contempt involves an act committed outside the presence of the court and requires notice and a hearing. State v. Maddux, 571 S.W.2d 819, 821 (Tenn. 1978); State v. Turner, 914 S.W.2d 951, 954-55 (Tenn. Crim. App. 1995). Rule 42(a) of the Tennessee Rules of Criminal Procedure provides as follows:

> A criminal contempt may be punished summarily if the judge certifies that he or she saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. . . .

Generally, courts are limited in punishment to a fine of $50 and imprisonment of no more than 10 days. See Tenn. Code Ann. § 29-9-103; In re Throneberry, 754 S.W.2d 633 (Tenn. Crim. App. 1988).

The defendant first complains that the trial judge was a "witness." While the trial judge in this instance overheard the conduct at issue, he was not a witness in the traditional sense. See Tenn. R. Evid. 605. In our view, any attempt by an attorney "to fix a case" by a discussion of the merits in an ex parte telephone conversation with a judge would qualify as directly contemptuous, would be "in the presence of the court," and would not require the recusal of the judge. See State v. Krichbaum, 152 Tenn. 416, 278 S.W. 54 (1925); In Re Hickey, 149 Tenn. 344, 258 S.W. 417 (1924). Of greater significance is the contention by the defendant that the evidence is insufficient in this instance to establish the impropriety of the communication. Under our law, the determinations of the trial judge on questions of fact are given the weight of a jury verdict and are conclusive on appeal unless the appellate court determines that the evidence preponderates otherwise. Clenny v. State, 576 S.W.2d 12 (Tenn. Crim. App. 1978). The burden is on the defendant to show that the evidence preponderates against the findings of the trial judge. State v. Nixon, 669 S.W.2d 679, 694 (Tenn. Crim. App. 1983). This court may not weigh the evidence and must only determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Tenn. R. App. P. 13(e).

The defendant was cited for willful misbehavior, the violation of a specific disciplinary rule regulating the conduct of attorneys. Tennessee Supreme Court Rule 8, DR 7-110 (emphasis added), provides as follows:

> (A) A lawyer shall not give or lend any thing of value to a judge, official or employee of a tribunal except as permitted by Section C(4) of Canon 5 of the Code of Judicial Contact, but a lawyer may make a contribution to the campaign fund of a candidate for judicial office in conformity with Section B(2) under Canon 7 of the Code of Judicial Conduct.
> (B) In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending, except:
> (1) In the course of official proceedings in the cause.
> (2) In writing if the lawyer promptly delivers a copy of the writing to opposing counsel or to the adverse party if that party is not represented by a lawyer.
> (3) Orally upon adequate notice to opposing counsel or to the adverse party if that party is not represented by a lawyer.
> (4) As otherwise authorized by law, or by Section A(4) under Canon 3 of the Code of Judicial Conduct.

The plain language of the rule prohibits any communication "as to the merits of the cause." The rule allows, however, "ex parte communications for scheduling, administrative purposes, or

emergencies that do not deal with substantive matters or issues on the merits . . . ." Tenn. S. Ct. R. 10, Canon 3(B)(7)(a).

The narrow issue presented here is whether the stipulated facts established that the defendant communicated with the trial judge on the merits of the probation violation, conduct which would be violative of the disciplinary rule. The merits of the case were those facts which would have warranted a revocation of Friedman's probation. In our view, the evidence is simply insufficient to establish that. The record demonstrates neither "willful behavior . . . as to obstruct the administration of justice" nor "willful misbehavior" of the defendant as an officer of the court in an official transaction. "Some information," the only description of the content of the communication appearing in this record, is permitted under the rules. If its nature was the discussion of scheduling issues or the description of exigencies pertinent to procedure, the communication would have been permitted by the rules. Certainly, the limited proof that the defendant provided "some information" before the trial judge ended the conversation did not establish obstruction of justice or necessarily qualify as misbehavior in an official transaction.

Trial courts have a dual purpose in enforcing Tennessee Rule of Criminal Procedure 42(a): first, to protect counsel in providing vigorous advocacy; and second, to protect the process of an orderly trial. State v. Green, 783 S.W.2d 548 (Tenn. 1990). In Offutt v. United States, 348 U.S. 11, 13, 75 S. Ct. 11 (1954), the purpose of the summary contempt procedure was described as follows:

> It is a mode of vindicating the majesty of law, in its active manifestation, against obstruction and outrage. The power thus entrusted to a judge is wholly unrelated to his personal sensibilities, be they tender or rugged. But judges also are human, and may, in a human way, quite unwittingly identify offense to self with obstruction to law.

In this instance, the defendant's behavior may have been discourteous and, perhaps, bordered on impropriety. Given the opportunity, he might have discussed the merits of the probation revocation proceeding. It appears, however, that the trial judge's unilateral termination of the communication pre-empted that possibility. Because the nature of the communication is not in the record, the evidence is insufficient to support the conviction.

Accordingly, the judgment is reversed and the cause dismissed.

_____
GARY R. WADE, PRESIDING JUDGE