IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 10, 2002

## STATE OF TENNESSEE v. JARED ANTHONY BREAUX

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-I-458     Frank G. Clement, Jr., Judge**

---

**No. M2001-01993-CCA-R3-CD - Filed May 7, 2002**

---

The defendant, who had three convictions for DUI, was incarcerated after the suspended portion of his most recent DUI sentence had been revoked because of a fourth arrest for DUI and his failure to report the new arrest to his probation officer. The following month, the defendant was released on a four-day furlough to attend his grandmother's funeral in Louisiana, and, apparently because of the late hour when the release occurred, the conditions of his release were not explained. Two hours later, the defendant was seen by a jail deputy at a nearby Hooter's Restaurant, as he drank a beer with his brothers, whom he had met there for the journey to Louisiana. Following a hearing, he was held in contempt of court for consuming an alcoholic beverage while on furlough and sentenced to ten days confinement to be served consecutively to the sentence for which he then was incarcerated. He timely appealed that ruling, arguing that since the conditions of the furlough had not been explained to him, the evidence was insufficient for the finding that he was in contempt of court. Upon our review, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Ross E. Alderman, District Public Defender, and Hollis I. Moore, Jr., Assistant District Public Defender, for the appellant, Jared Anthony Breaux.

Paul G. Summers, Attorney General & Reporter; Christine M. Lapps, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and James D. Sledge, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## BACKGROUND

Following charges of possession of marijuana, fourth offense, and driving under the influence ("DUI"), third offense, the defendant pled guilty on May 11, 2000, to DUI, first offense, a Class A misdemeanor. He was then sentenced as follows: eleven months and twenty-nine days as a Range I, standard offender, with 100% of the first seventy days to be served in the county jail and the balance on probation; payment of a $350 fine and restitution to the victim; revocation of his driver's license for one year; completion of alcohol treatment; and submission to random drug screens. Apparently, the defendant served the required portion of the sentence in jail and was then placed on probation, because on May 7, 2001, his probation officer filed an affidavit for violation of probation, alleging that he failed to report he was arrested on April 20, 2001, for DUI and driving on a revoked license and failed, as well, to complete the court-ordered alcohol treatment for his 2000 DUI conviction. Finding that the defendant had violated his probation, the trial court then sentenced him to 180 days to be served day-for-day at 100% at which time his probation would terminate. However, the court ordered further that the defendant could be released after serving ninety days and completing the New Avenues alcohol and drug rehabilitation program.

On Friday, June 15, 2001, while the defendant was incarcerated, the trial court granted him a furlough so that he could attend his grandmother's funeral in Louisiana. Although a formal furlough order was not issued that Friday evening when he was released, the court notified a court clerk, and the proper documentation was faxed to the Davidson County Correctional Work Center ("CWC") where the defendant was confined. Within two hours of the defendant's release, the officer who had released him saw the defendant drinking beer at a nearby Hooter's Restaurant. The State filed a motion for an order to show cause as to why the defendant should not be held in contempt for failing to obey the terms of the funeral furlough, and the trial court then entered an order requiring that the defendant appear on July 12, 2001, to show cause as to why he should not be held in contempt of court. At the conclusion of the hearing on July 18, 2001, the court found the defendant in contempt of court and sentenced him to ten days, to be served day-for-day at 100% and consecutively to his previous 180-day sentence. The defendant then filed a timely notice of appeal.

## CONTEMPT HEARING

At the contempt hearing, Deputy Sheriff Albert Roberts of the Davidson County Sheriff's Department testified that he was working the 3:00 p.m. to 11:00 p.m. shift on June 15, 2001, at the CWC when he received a fax concerning the defendant's funeral furlough. Roberts told the defendant where to sign the furlough documents and informed him of the time that he was to return to the CWC. Roberts said that the defendant knew he was being furloughed to attend an out-of-state funeral at the time he signed the paperwork. Although Roberts did not read the document the defendant signed, he did not believe the document said anything about drinking alcohol while on the funeral furlough. The defendant was released from the CWC at about 10:00 p.m., according to Roberts.

Deputy Roberts finished work at 11:30 p.m. and went to pick up his girlfriend, who worked at a nearby Hooter's Restaurant. He arrived at Hooter's at about 11:50 p.m. and saw the defendant walking back from the restroom. The defendant's personal property had been returned to him when

he was released, and the defendant left the CWC wearing a Titans' jersey, shorts, and a necklace. Roberts recognized the defendant from the clothes he was wearing, which were the same as when he was released, as well as his facial features, goatee, and dark hair. Roberts made eye contact with the defendant, who suddenly appeared "real agitated" although Roberts did not approach him. He saw that the defendant was sitting at the front of the restaurant with two or three other men, and each had one empty beer bottle and another full, or partially full, beer bottle. Roberts saw the defendant, in particular, drinking out of a Budweiser beer bottle. He called another officer at the CWC and told him to note on the defendant's furlough sheet that the defendant had been drinking beer and said that he would write a report the next day concerning the defendant's activities. Roberts saw the defendant and his group leave the restaurant but could not see what type of vehicle they left in.

According to procedure, a case manager is supposed to inform an inmate, about to be released on furlough, of the applicable rules. Roberts said that since the defendant was in the drug and alcohol program, he should have been told by the case manager not to drink during his furlough. He said he thought four or five case managers were on duty the day the defendant was furloughed, but none were there when the defendant was released that night, and Roberts did not witness the rules being explained to the defendant.

The defendant testified that he never talked to a case manager about his funeral furlough, although he did talk with Deputy Roberts, who told him only when to be back at the CWC. He said that no one gave him a copy of the funeral furlough that he signed. The defendant met his brothers at Hooter's because they were not sure how to get to the CWC. He said that he was released from the CWC at 10:30 p.m. and then walked approximately a mile to the restaurant. When he got to Hooter's, he ordered a meal while waiting for his brothers who, upon arrival, ordered a few beers. The defendant said he drank a draft beer in a cup, not out of a bottle. For drinking alcohol during his funeral furlough, he received fifteen days in the "hole."

On cross-examination, the defendant said that his brother Chad, who met him at Hooter's, had served a sentence at the CWC. He testified that at the time he was released on furlough, he had been accepted into New Avenues, a drug and alcohol treatment program, and was to start that program when he returned to the CWC after his furlough. He understood that he was granted the furlough to attend his grandmother's funeral and that he knew it was wrong to drink during his furlough.

Considering the evidence at the contempt hearing, the trial court made the following findings:

> So the question is, whether [the defendant's] conduct has constituted a conduct that it's [sic] so improper that it constitutes the contempt of court? While I think it was extremely poor judgment and just an "f" in common sense, I don't think it was contempt of court to go to Hooter's. It sure would have been a lot better to go to the Hubble [sic] House or the Waffle House, which I think is next door. . . . But I don't think going to a restaurant that is a full service

restaurant even though it provides alcohol beverages, I don't think that is contempt of court, but it sure was stupid.

I don't really buy the argument that: Well, we had to meet at Hooter's because they didn't know how to get to CWC. General Sledge, very, very effectively established that one of the two brothers in the car knew how to get to CWC. And you don't have to be the driver. A lot of times, I've been the passenger telling people turn left here and turn right there. So I really don't find that argument of the defendant to be persuasive at all.

Now the question is, whether or not it's contempt of court for a person who's in jail particularly for a DUI; particularly, for having been convicted of multiple DUI's; particularly, who's in jail and I think for a probation violation for a DUI; and who's either in New Avenues or is going to start New Avenues next Monday?

Whether that's contempt of court for going out and consuming alcoholic beverages openly and notoriously, not that it would have been any better had it been in the privacy of ones [sic] home. I find that it is contempt of court and that some punishment is in order. Otherwise, those who act responsibly are in essence being punished for acting responsibly.

After finding the defendant guilty of contempt, the court discussed the length of his sentence:

[S]ince he got credit for the days he was out, one of which he was enjoying the benefit of the bubbly at Hooter's, I think a 10-day sentence is appropriate, which would be added to his current sentence, which in essence constitutes a six-day sentence. . . . So I find a 10-day sentence for contempt of court to be added to the current sentence. That's my judgment.

## ANALYSIS

### Sufficiency of the Evidence

Courts are granted contempt power by statute: "For the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code." Tenn. Code Ann. § 16-1-103 (2001). Tennessee Code Annotated section 29-9-102 defines the limits of courts' contempt power:

The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

(2) The willful misbehavior of any of the officers of such courts, in their official transactions;

(3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

(4) Abuse of, or unlawful interference with, the process or proceedings of the court;

(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or

(6) Any other act or omission declared a contempt by law.

Tenn. Code Ann. § 29-9-102 (2001).

A court's contempt power serves to maintain the integrity of its orders and vindicate its authority. State v. Winningham, 958 S.W.2d 740, 746 (Tenn. 1997) (citing United States v. Dixon, 509 U.S. 688, 742, 113 S. Ct. 2849, 2880, 125 L. Ed. 2d 556, 597-98 (1993) (Blackmun, J., concurring and dissenting); State v. Sammons, 656 S.W.2d 862, 869 (Tenn. Crim. App. 1982)). Contempt power should only be used to prevent a clear interference with, or obstruction of, the administration of justice. Robinson v. Air Draulics Engineering Co., 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964).

Contempts are either civil or criminal. Civil contempt is a remedial measure meant to serve a private purpose and is not meant to deter offenses against society. Higgins v. Lewis, 23 Tenn. App. 648, 660, 137 S.W.2d 308, 316 (1939) (citing McCrone v. United States, 307 U.S. 61, 64, 59 S. Ct. 685, 686, 83 L. Ed. 1108, 1110 (1939)). On the other hand, criminal contempt is "punitive in character, and the proceeding is to vindicate the authority of the law and the court as an organ of society." Shiflet v. State, 217 Tenn. 690, 693, 400 S.W.2d 542, 543 (1966).

Contempts can also be categorized as direct or indirect. Our supreme court has stated that "[d]irect contempt is based upon acts committed in the presence of the court, and may be punished

summarily." Black v. Blount, 938 S.W.2d 394, 398 (Tenn. 1996). On the other hand, "[i]ndirect contempt is based upon acts not committed in the presence of the court, and may be punished only after the accused has been given notice and an opportunity to respond to the charges at a hearing." Id. (citing State v. Maddux, 571 S.W.2d 819, 821 (Tenn. 1978)).

The defendant in the instant case was accused of an indirect, criminal contempt because his furlough violation occurred outside the presence of the court and prevented the trial court from administering the law. Rule 42(b) of the Tennessee Rules of Criminal Procedure governs the prosecutions for indirect, criminal contempt:

> A criminal contempt except as provided in subdivision (a) of this rule [regarding summary disposition of direct contempt] shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing except with the defendant's consent. Upon a verdict of finding of guilt the court shall enter an order fixing the punishment.

Tenn. R. Crim. P. 42(b) (emphasis added).

The defendant's guilt in a criminal contempt case "must be established by proof beyond a reasonable doubt." Black, 938 S.W.2d at 398. The defendant has the burden of proving there is insufficient evidence to support his conviction. Id. at 399. The standard of review for such cases is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); Tenn. R. App. P. 13(e). This court does not reweigh the evidence. Black, 938 S.W.2d at 399.

In Black, our supreme court held that contempt is not limited to "conduct which actually interferes with a pending proceeding" but may extend to conduct following the conclusion of a proceeding as well. Id. at 401. The court concluded that "criminal contempt of court which obstructs the administration of justice includes all willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute." Id.

The sole issue in this appeal is whether the proof established that the defendant committed criminal contempt. In making this determination, we will review the situation which existed on the Friday night as the defendant was released from jail to attend his grandmother's funeral in Louisiana.

First, we note that the defendant had been convicted of possession of a controlled substance in 1995, 1999, and 2000 and of DUI in 1994, 1999, and 2000. Because of the spread of the convictions, it is somewhat difficult to determine from the record on appeal how many times he has been placed on probation. However, it appears that on at least three occasions, he had been under such supervision. Provisions of his May 2000 plea of guilty and probation were that he submit to "alcohol evaluation and treatment . . . and take random drug screens." It is likely that he was subject to similar requirements during his previous periods of probation, given the nature of his convictions. On April 20, 2001, while on probation, he was arrested for driving on a revoked license and a fourth time for DUI. Subsequently, on May 7, 2001, a violation of probation warrant was filed alleging that he had not immediately reported these new charges to his probation officer and had not completed his alcohol treatment plan, as required by the probation order. From this history, we conclude that the defendant was well experienced with relevant probationary requirements regarding the use of alcoholic beverages, although not of release on furlough, to the extent that it might differ from a release on probation.

On Friday evening, June 15, 2001, at approximately 10:00 p.m., the defendant was released from the CWC on a four-day furlough to attend his grandmother's funeral in Louisiana. Given the day of the week and the time, it is not surprising that a case manager was not available to discuss the applicable rules with the defendant. Upon his return from the furlough, the defendant was to begin a drug and alcohol treatment program. He was to be picked up and taken to the funeral by his brothers, one of whom had previously been incarcerated at the CWC and, therefore, should have been familiar with its location. However, the defendant walked what he estimated as "a half-mile[,] [m]aybe a mile" from CWC to Hooter's which, also by his testimony, was located by an exit from the expressway. He admitted at the hearing that he drank a beer while at Hooter's and that, while he did not believe he was prohibited from going to such an establishment while on furlough, he "knew it wasn't all right to drink."

Given the defendant's substantial experience with the court system and apparent inability to obey drug and alcohol restrictions, as well as his candor in admitting that he knew he should not have consumed alcohol while on a funeral furlough, we cannot conclude, as the defendant urges on appeal, that he did not commit criminal contempt by so doing. The release was at his request, and he cannot seek advantage from the fact that, likely because it occurred late on a Friday night, it was not explained that he should not engage in behavior which he already knew was prohibited,

especially given the nature and number of his convictions.[1]  Accordingly, we conclude that the record supports the trial court's finding the defendant to be in contempt of court.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____

ALAN E. GLENN, JUDGE

---

[1]In his brief, the defendant hypothesizes that, by the trial court's reasoning, he would have been held in contempt if he had consumed wine at his grandmother's wake. Although the trial court did comment, in its finding, that an inmate on furlough should not consume alcohol even while at a residence, it did not equate drinking wine at a wake for a deceased grandmother with having a late night beer at Hooter's.  While the defendant presents an interesting analogy, we decline to accept it because it presents facts unlike those upon which the trial court based its ruling.